(95 Misc. Rep. 658)

### SULLIVAN et al. v. YOUNG et al.

(Supreme Court, Equity Term, Erie County. June 23, 1916.)

1. MECHANICS' LIENS ☜16—PRIORITIES—BUILDING LOAN—STATUTE—"CONTRACT FOR BUILDING LOAN."

Where a co-operative savings and loan association advanced $5,500 on a half-completed house, taking a bond and mortgage, without agreement as to how the money should be used by the borrower, and without agreement that it should be used either to pay off existing obligations of the borrower incurred in the erection of the house or expended by him in finishing it, the transaction was not a contract for a building loan, within Lien Law (Consol. Laws, c. 33) § 22, providing that such a contract must be in writing, duly acknowledged, and filed in the office of the county clerk within 10 days after execution, etc., since a "contract for a building loan" means an agreement by which one undertakes to advance to another money to be used in the erection of a building.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. § 17; Dec. Dig. ☜16.]

2. MECHANICS' LIENS ☜198—PRIORITY OVER MORTGAGE—STATUTE.

Lien Law, § 13, providing that a lien for material furnished or labor performed in the improvement of real property shall have priority over advances made upon any mortgage or other incumbrance after filing of notice of lien, covers a case of an ordinary loan upon bond and mortgage by a co-operative savings and loan association to the owner of a half-completed house.

[Ed. Note.—For other cases, see Mechanics' Liens, Cent. Dig. §§ 348–355; Dec. Dig. ☜198.]

Action to foreclose a mechanic's lien by Frederick M. Sullivan and another against J. A. Young, the Gowanda Co-operative Savings & Loan Association, and others. Relief prayed for against the Savings and Loan Association denied.

Thomas C. Burke, of Buffalo, for plaintiffs.

Fred J. Blackmon, of Buffalo, for defendant Gowanda Co-operative Savings & Loan Ass'n.

WHEELER, J. The facts are undisputed. On September 23, 1915, Young contracted to purchase a lot on North Park avenue, Buffalo, from the Maher Development Company. In October he commenced the erection on the lot of a frame house to cost about $5,200. Between October 28, 1915, and December 29, 1915, plaintiffs, at Young's request, furnished lumber of the value of $1,007.52, which was used in the construction of the house. About January 6, 1916, Young ceased work on the house, leaving it inclosed and ready for plastering. The estimated cost of completion is $2,400, so the house now is about one-half completed.

About the middle of December, 1915, the owner, Young, through Howe & Howe, mortgage brokers, applied to the Loan Association for a loan of $4,000. On December 21, 1915, the appraisal committee, accompanied by the secretary of the association, inspected the property and found the house in process of construction, substantially in the condition in which it is to-day. They were told by Mr. Howe that the house would be similar to the building north of it, except that the finish on the second floor was to be oak, instead of Georgia pine. The committee appraised the land at $1,400, and estimated the value of the building, when completed, at $5,200 or $6,600 in all. The report was presented to a meeting of the association on December 21, 1915, and passed. Nothing has been said as to when the money was to be advanced.

On January 7, 1916, Mr. Howe telephoned the secretary of the association, and requested that the secretary send down a check for $1,500, as he, the secretary, had seen the property. The secretary sent Mr. Howe a check for that amount, payable to the order of Mr. Blackmon, the association's attorney. Mr. Howe took the check to Mr. Blackmon, who drew up a bond and mortgage for $4,000 in favor of the association and attended to their execution by Young. He then went to the office of Mr. Augspurger, who had a deed of the property from the Maher Development Company to Young, and where Young executed a second mortgage to the Buffalo Park Realty Company to secure part of the purchase price of the premises. Then on the same day, January 7, 1916, Mr. Blackmon went to the county clerk's office, and the deed to Young, the mortgage to the association, and the second mortgage to the Buffalo Park Realty Company were placed on record. Mr. Blackmon thereupon advanced to Young the $1,500 sent in by the association. He paid the recording fees and other expenses of the loan, then the sum of $270.31 to the Maher Development Company on account of the purchase price of the lot, and the balance of $1,179.79 to Howe & Howe as representing Young. No building loan agreement was signed or filed, and nothing was said as to when the balance of $2,500 represented by the mortgage was to be advanced.

On January 12, 1916, the plaintiffs filed in Erie county clerk's office a notice of lien against the interest of the owner, Jay A. Young, in the premises in question, and on January 29, 1916, they filed a notice of lien against the interest of the mortgagee, Gowanda Co-operative Savings & Loan Association, in the premises. The plaintiffs seek to subordinate the mortgage in question and make it inferior to their lien. The section of the lien law relied on reads as follows:

"Sec. 22. *Building Loan Contract.* A contract for a building loan, either with or without the sale of land, and any modification thereof, must be in writing and duly acknowledged, and within ten days after its execution be filed in the office of the clerk of the county in which any part of the land is situated, and the same shall not be filed in the register's office of any county. If not so filed the interest of each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter. * * *" Laws 1909, c. 38.

The plaintiff seeks to subject the mortgage above set forth to the liens of the parties to this action filing mechanics' liens against the mortgaged property by virtue of the provisions of this section, on the theory that there was a contract between Young and the Savings & Loan Association for a building loan within the meaning of this section.

[1] In our opinion, the transaction or transactions between Young, the mortgagor, and the Gowanda Co-operative Savings & Loan Association, do not come within the provisions of section 22 of the Lien Law in reference to so-called building loan contracts. Without undertaking to give a comprehensive definition of what constitutes a *"contract for a building"* loan, as used in the section, it is perhaps sufficient to say that its ordinary and usual meaning is to describe an agreement by which one undertakes to advance to another money to be used in the erection of a building. The section quoted was simply intended to provide that, where such an arrangement exists, the parties to it shall acquire thereby no rights or equities superior to those who might file mechanics' liens, as provided in this chapter, unless the contract for a building loan was executed in writing and duly acknowledged and recorded with the clerk of the county, as required by the act.

It will be noted that the section in question makes no mention of mortgages, or the effect of the giving and recording of a mortgage. Its operation is confined to *contracts for building loans*. In order that there may be any valid contract for a building loan, by the very terms of the act such contract must be in writing, and acknowledged, so as to entitle it to be recorded. If any such agreement rests in parol, it is invalid and of no effect, and constitutes in law no contract whatever for a building loan.

The bond and mortgage given by Young to the Savings & Loan Association was not tantamount to a contract for a building loan. We shall see this bond and mortgage falls under the provisions of another section of the act. The bond and mortgage, and the transactions connected with its giving, and the advancement of money under it, cannot in any fair sense be termed either a written or a verbal contract for a building loan.

When the mortgage was given, and the $1,500 advanced, nothing whatever was said or agreed as to how the money should be used. There was no agreement whatever that it should be used either to pay off existing obligations of the mortgagor, incurred in the erection of the houses on the property, or expended by him in finishing the same. The mortgagor was at liberty to use this money just as he saw fit. He might, so far as any agreement with the Savings & Loan Association is concerned, have used the $1,500 received in paying gambling debts. The same is true as to balance of the mortgage which remained unadvanced. There was nothing in the agreement between the parties as to how this balance should be used. Consequently we hold there never was any contract for a building loan between Young and the Savings & Loan Association. The arrangement between them was simply for a straight mortgage on the security of

the property, to the extent of $4,000, of which sum $1,500 was advanced when the mortgage was executed and recorded.

[2] Section 13 of the Lien Law covers such a case, and this provides that:

"A lien for materials furnished or labor performed in the improvement of real property shall have priority * * * over advances made upon any mortgage or other incumbrance thereon after such filing"

—that is, filing of notice of lien. That is this case, and all there is of this case. If the Savings & Loan Association should make any further advances on account of its mortgage, as to those advances its mortgage would be a lien subsequent and inferior to the mechanics' liens filed by the parties to this action.

As to the $1,500 advanced at the time of giving the mortgage, the mortgage constitutes a lien prior and superior to the mechanics' liens filed. Consequently the relief prayed for in this action against the Savings & Loan Association must be denied, with costs to said association as against the plaintiff.