P. T. McDermott, Inc., Respondent, *v.* Lawyers Mortgage Company, Appellant, and Empire City Lumber Company et al., Respondents, Impleaded with Others.

Liens — object of section 22 of Lien Law — construction — when contract a building loan agreement within the meaning of the statute — failure to file contract subordinates mortgages given thereunder to mechanic's lien thereafter filed — lien does not attach to mortgage debt nor to mortgage itself — when first mortgagee and other prior incumbrancers necessary parties to action to foreclose second mortgage.

1. The object of section 22 of the Lien Law (Cons. Laws, ch. 33) is to acquaint prospective contractors with the fact that they furnish labor and materials subject to claims prior to theirs against the property, so far as advances thereunder are prior to their liens when filed (Lien Law, § 13), and also to inform such contractors of the amounts to be advanced and the times of such advances.

2. The statute which gives to a contractor, mechanic or materialman a lien upon the lands of another, created a remedy in such cases which was unknown to the common law, and while it must receive a liberal construction to secure the beneficial purposes which the legislature had in view, it cannot be extended to a state of facts not fairly within its general scope and purview.

3. An agreement, by the terms of which a construction company agreed to erect buildings as described therein on certain premises and the defendant agreed to make building loans, in which the buildings are described and the times and amounts of advances as the buildings progress are indicated, and in which it is provided that "the terms of said building loans shall be set forth in building loan agreements and bonds and mortgages" in defendant's usual form, has all the essentials of a complete contract for a building loan, and may not be divested of its true character by the incorporation therein either of terms and conditions not necessarily a part of the building loan agreement or of terms and conditions as to good title on which the loan is to be made.

4. Where defendant neglected to file such an agreement and modifications thereof, as required by section 22 of the Lien Law, its interest in the real property, under first mortgages given to it by the construction company, pursuant to said agreement and modi-

fications, " is subject to the lien and claim " of this plaintiff who thereafter filed a notice of lien under said statute. Actual knowledge of the agreement is not a substitute for the filing and defendant's mortgages must be subordinated in point of time exactly as if in fact the lien came first and its mortgages came second. Nor is there any force in the contention that if plaintiff's lien attaches to anything it is only to the unpaid portion of the building loan. (*Pennyslvania Steel Co.* v. *Title G. & T. Co.*, 50 Misc. Rep. 51; 120 App. Div. 879; 193 N. Y. 37, distinguished.)

5. Section 22 of the Lien Law means literally that if a building loan contract is not filed " the interest of each party to such contract *in the real property* affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien," but the court may give effect to this provision only according to its fair intent and meaning. A debt secured by mortgage is not an interest in real estate. The mortgage is a lien given as security for the debt. When the mortgage, prior in time of record, becomes subject to a mechanic's lien, prior in law, the mortgage is subordinated thereto as an incumbrance on the real estate, but the lien does not attach to the mortgage debt nor to the mortgage itself, which is an incident to the debt. Defendant's mortgages, therefore, and the debts secured thereby, do not represent such an interest in the property so subject to the lien and claim of the plaintiff that they may be impressed with its lien.

6. The construction company having been adjudged a bankrupt, the defendant having elected to declare due its bonds and mortgages, and a second mortgagee having commenced an action to foreclose its mortgage, the rights of all parties might have been effectively adjudged therein. That was the first forum and the proper forum in which to establish all equities and priorities. Defendant and other prior incumbrancers became necessary parties to that action when it appeared that this plaintiff, defendant in the foreclosure action, claimed priority to them under the statute. Without their presence a complete determination of the controversy could not be had. They were within the description of persons not parties, whose rights must be ascertained and settled before the rights of the parties to the suit can be determined.

*McDermott* v. *Lawyers Mortgage Co.*, 190 App. Div. 955, reversed.

(Argued December 14, 1921; decided January 10, 1922.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the second judicial

department, entered January 29, 1920, unanimously affirming a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

*William N. Dykman* and *Walter K. Earle* for appellant. The lienors had notice of the building loan mortgage. (*Packard* v. *Sugerman*, 31 Misc. Rep. 623.) The agreement of October thirteenth was not the building loan agreement nor any part of it within the meaning of section 22 of the Lien Law. The five agreements of May 26, 1916, are the only building loan agreements. (*Pennsylvania Steel Co.* v. *T. G. & T. Co.*, 193 N. Y. 37; *A. A. S. & L. Assn.* v. *Campbell*, 13 App. Cas. D. C. 581.) The judgment is not authorized by the Lien Law. (*Belmont* v. *Coman*, 22 N. Y. 438; *Dingeldein* v. *3d Ave. R. Co.*, 37 N. Y. 575; *Equitable Life A. Soc.* v. *Bostwick*, 100 N. Y. 628; *Smith* v. *Cornell*, 111 N. Y. 554; *Jackson* v. *Bronson*, 19 Johns. 325; *Cooper* v. *Newell*, 17 Abb. Pr. 742; *Merritt* v. *Bartholick*, 36 N. Y. 44.) When the Montague Company foreclosed its mortgage and sold the land, the plaintiff and other contractors lost their liens and all remedy under section 22. (*Greene* v. *Mussey*, 76 App. Div. 174; *Hening* v. *Punnett*, 4 Daly, 543; *Graham* v. *Bleakie*, 2 Daly, 55; *Penn. Steel Co.* v. *T. G. & T. Co.*, 50 Misc. Rep. 51.) The agreement between the Lawyers Mortgage Company and the Montague Construction Company of October 13, 1915, was not a building loan agreement within the contemplation of section 22 of the Lien Law. (*Spruck* v. *McRoberts*, 139 N. Y. 193; *Brown* v. *N. Y. C. R. R. Co.*, 44 N. Y. 79; *Hough* v. *Brown*, 19 N. Y. 111; *Hawksworth* v. *Durant*, 93 Misc. Rep. 149; *Schenectady Stove Co.* v. *Holbrook*, 101 N. Y. 45; *Petze* v. *Morse Dry Dock*, 125 App. Div. 270.) The decision of the trial court holding that the agreement between the Lawyers Mortgage Company and the Montague Construction Company was such as is required to be filed, is contrary to the facts found and to the law and is erroneous.

(*Pennsylvania Steel Co.* v. *T. G. & T. Co.*, 193 N. Y. 37; *Lowenfeld* v. *Wimpie*, 139 App. Div. 617.)

*Albert A. Hovell, Harry W. McChesney, Isidore M. Silberman, Edward Cassin* and *Harvey O. Dobson* for respondents. The object and purpose of the Lien Law is to prevent the assignment or transfer of moneys due or to become due from an owner of real estate for the improvement of the same and from a lender under a contract for a building loan for the improvement of real estate either with or without the sale of land without notice to the laborers, contractors and materialmen who performed the labor or furnished materials in making such improvements and express provision is therein made for giving such notice. (*Bertholf* v. *O'Reilly*, 74 N. Y. 509; *McDonald* v. *Mayor, etc.*, 170 N. Y. 409; *Brace* v. *City of Gloversville*, 167 N. Y. 452; *Ringle* v. *Wallis Iron Works*, 149 N. Y. 439; *Smith & Co.* v. *Douglas*, 165 App. Div. 707; *Penn. Steel Co.* v. *T. G. & T. Co.*, 50 Misc Rep. 51; *Loonie* v. *Hogan*, 9 N. Y. 435; *Rollin* v. *Cross.* 45 N. Y. 766; *Alyea* v. *Citizens Nat. Bank*, 12 App. Div. 574.) The agreement includes a contract for a building loan, and not having been filed as required by the Lien Law, the interest of each party thereto in the real property affected thereby is subject to the liens and claims of the respondents. (*Penn. Steel Co.* v. *Title G. & T. Co.*, 120 App. Div. 879.) The sale of the property affected by said building loan contract under the foreclosure of the second mortgage on the property in the action brought in the County Court of Kings county, to which the appellant was not a party, did not cut off the liens of the respondents nor bar their right to enforce the same against the interest of the appellant in the property. (*Penn. Steel Co.* v. *Title G. & T. Co.*, 120 App. Div. 879,) The decision of the court holding that the agreement is " a contract for a building loan," and that the interest of the Lawyers Mortgage Company in the property at

the time the respondents' liens were filed is subject to
the liens of the respondents for the reason that said
agreement was not filed as required by the Lien Law, is
not contrary to law and is supported by all of the evidence
in the case. (*Penn. Steel Co.* v. *Title G. & T. Co.*, 193
N. Y. 37; *Lowenfeld* v. *Wimpie*, 139 App. Div. 617.)
The respondents are entitled to have the interest of the
appellant in the property, at the time their respective
liens were filed, sold, and the proceeds of such sale
applied to the payment of their liens. (*Berger Mfg. Co.*
v. *City of New York*, 206 N. Y. 24; *Alyea* v. *Citizens
Savings Bank*, 12 App. Div. 574; 162 N. Y. 597; *Murtha*
v. *Curley*, 90 N. Y. 372.)

Pound, J. This is an action to foreclose a mechanic's
lien upon certain real property consisting of city lots in
Brooklyn. (Lien Law [Cons. Laws, ch. 33], § 3.) The
judgment demanded is that, with other relief, the court
settle and determine the equities of the parties and
determine the priority of their claims. (Lien Law, § 45.)
The plaintiff, respondent, is a lienor which dug the cellar
and laid the foundations for buildings erected on the
premises.

The work was done between December 9, 1915, and
May 24, 1916, inclusive. Its notice of lien was filed on
August 1, 1916. Defendants are the grantors, grantees,
mortgagors, mortgagees, lienors and other parties herein-
after mentioned. The action was begun on January 19,
1917. On January 10, 1917, the premises had been sold
on a judgment of foreclosure and sale in an action to
foreclose a mortgage given thereon by the Arden Construc-
tion Co., Inc., to the Montague Construction Company.
Plaintiff's lien was filed subsequent to such mortgage.
It was made a defendant and as such interposed an
answer in the mortgage foreclosure action and unsuccess-
fully endeavored to assert the priority in law of its lien.
The Lawyers Mortgage Company, whose mortgages were

prior to the Montague mortgage, was not a party to that action. The usual relief, in this action, adjudging the sale of the premises for the satisfaction of the liens, would be ineffectual, as the plaintiff when this action began had been cut off from any lien on said premises except as against the Lawyers Mortgage Company, as will hereafter appear. The details are innumerable, but many have been omitted from the facts stated as tending to obscure rather than clarify the main points.

The appellant holds five first mortgages executed to it by the Arden Construction Co., Inc., dated May 26, 1916, to secure building loans for a total of $340,000 on the premises in question, made in form in accordance with building loan agreements between the same parties, which were filed on the 31st day of May, 1916.

The Lien Law (§ 22) provides: "A contract for a building loan, either with or without the sale of land, and any modification thereof, must be in writing and duly acknowledged, and within ten days after its execution be filed in the office of the clerk of the county in which any part of the land is situated, and the same shall not be filed in the register's office of any county. *If not so filed the interest of each party to such contract in the real property affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien under this chapter.* A modification of such contract shall not affect or impair the right or interest of a person, who, previous to the filing of such modification had furnished or contracted to furnish materials, or had performed or contracted to perform labor for the improvement of real property, but such right or interest shall be determined by the original contract."

Upon these provisions respondent relies to preserve its liens. Their object is to acquaint prospective contractors with the fact that they furnish labor and materials subject to claims prior to theirs against the property, so far as advances thereunder are prior to their liens when filed

(Lien Law, § 13), and also to inform such contractors of the amounts to be advanced and the times of such advances. An unfiled contract for the building loan in this action is the foundation of plaintiff's claim of priority. It has been found by the trial court and the decision has been unanimously affirmed by the Appellate Division that a contract for the building loans secured by appellant's mortgages was entered into between appellant and the Montague Construction Company on October 13, 1915, and modified on the 26th day of October, 1915, by a letter from appellant to Arthur H. Waterman, president of the Montague Company, consenting to the substitution of Braude & Papae as builders, which contract and modification were not filed in the office of the clerk of Kings county; the building loan agreements filed May 31, 1916, above referred to, in pursuance of which the appellant's mortgages were executed, were further modifications of the same contract, the Arden Construction Co., Inc., having acquired the title to the premises and succeeded to the rights of Braude & Papae; by reason of the failure to file the original contract and the letter modifying it " the interest of the defendant Lawyers Mortgage Company under said mortgage is subject to the lien and claim of the plaintiff." The court has directed judgment that the mortgages of appellant and the debts secured thereby are an interest in the real property affected thereby; and that such mortgages and the debts secured thereby should be sold to pay plaintiff's lien.

The appellant advanced $85,000 to the Arden Construction Co., Inc., on May 26, 1916, under the building loan agreement of October 13, 1915, as modified. From this advance was paid: $39,800 to Arthur H. Waterman, president of the Montague Construction Company. This was for the purpose of subordinating the lien of a mortgage on the lands herein held by the Montague Company to the mortgages of the Lawyers Mortgage Company; $11,051.34 to Catherine A. Peck for the purpose of

subordinating a mortgage of $77,000 on the same lands to the same mortgages; $450 to the Title Guarantee and Trust Company; $11,000 on the purchase price of certain other improved property which the Lawyers Mortgage Company had agreed to sell to the Montague Construction Company (to whose interests therein the Arden Construction Co., Inc., had succeeded) as a part of the agreement of October 13, 1915, and the balance of $22,698.66 to the Arden Construction Co., Inc. It does not appear whether other advances have been made.

How far may the rights and priorities of all the parties be effectively adjudged in this action? The proper rule for the construction of the remedial features of the Lien Law has been stated as follows: "The statute which gives to a contractor, mechanic or materialman a lien upon the lands of another, created a remedy in such cases which was unknown to the common law, and while it must receive a liberal construction to secure the beneficial purposes which the Legislature had in view, it cannot be extended to a state of facts not fairly within its general scope and purview." (O'Brien, J., in *Spruck* v. *McRoberts*, 139 N. Y. 193, 197; Lien Law, § 23.)

Appellant contends (1) that the agreement of October 13, 1915, was on its face (cf. *Poel* v. *Brunswick-Balke-Collender Co.*, 216 N. Y. 310, 313) not "a contract for a building loan" within the meaning of section 22 of the Lien Law, but was only a preliminary agreement to make a contract for a building loan on certain conditions; and (2) that in any event the priority of the agreements filed May 31, 1916, was not affected, except as to unpaid advances thereon, because by the terms of the original agreement certain of the advances were to be diverted from the construction of the buildings, so that plaintiff was not prejudiced by the failure to file the agreement. Neither of these contentions can prevail.

The first agreement had all the essentials of a complete contract for a building loan. By its terms the Montague

Construction Company agrees to erect the buildings as described therein on the premises in question and the Lawyers Mortgage Company agrees to make the building loans; the buildings are described and the times and amounts of advances as the buildings progress are indicated. It is provided that " the terms of said building loans shall be set forth in building loan agreements and bonds and mortgages in Lawyers Mortgage Company's usual form." The Montague Construction Company did not then own the premises, but it impliedly bound itself to acquire good title thereto and borrow the money as well as erect the buildings. (*Wood* v. *Duff-Gordon*, 222 N. Y. 88.) Such a contract may not be divested of its true character by incorporating therein either other terms and conditions not necessarily a part of the building loan agreement or the terms and conditions as to good title on which the loan is to be made. The provisions of section 22 of the Lien Law would be of little effect if they might be so easily evaded. Nothing was left to make the agreement of these parties final and enforcible. The title of the Montague Construction Company must be good and the mortgages first liens, but this requirement did not convert the agreement into an option merely. The language of the parties clearly was that of business agreed on rather than of mere preliminary negotiations for a business arrangement to be made in the future. No fundamental feature of an agreement was left open for future consideration and adjustment between the parties themselves; the contract was complete. (*Arliss* v. *Brenon Film Corporation*, 230 N. Y. 390.)

Nor is there any force in the contention that if plaintiff's lien attaches to anything it is only to the unpaid portion of the building loan. *Pennsylvania Steel Co.* v. *Title G. & T. Co.* (50 Misc. Rep. 51; 120 App. Div. 879; 193 N. Y. 37) holds nothing to the effect that the moneys advanced on a building loan agreement may be used for any purpose, subject only to the right of the lienor to resort to any

unpaid portion of such loan for the satisfaction of his lien. While it was suggested in the opinion that under certain circumstances " a lienor might resort to the unpaid portion of a building loan for the satisfaction of his lien," the correctness of that proposition was not essential to the decision and was not decided.  The building loan agreement in that case was filed in accordance with the statute two days after it was executed.  The contention was that it did not contain the entire contract of the parties and that it was ineffective as to subsequent lienors because the agreement that a part of the loan should be used to pay off a prior incumbrance was not incorporated therein. . The decision was that the lienor had no right to rely upon the letter of the building loan contract as an assurance that all the moneys received under it would be devoted to the building under construction;  that the written agreement was not breached by an oral agreement that an existing incumbrance, paramount to any liens that might be filed, should be paid off and that the mechanic's lien was subject to the mortgage to the extent of such advances.  Nothing else that the learned chief judge discoursed upon was essential to the decision and it suggests neither that the first agreement of October, 1913, was not an agreement for a loan nor that the only remedy of lienors in such a plight as that of plaintiff herein, under section 22 of the Lien Law, is to resort to the unpaid portion, if any, of the building loan for the satisfaction of their liens.  It follows that the judgment appealed from properly determines the priority of plaintiff's lien.

The next question is whether the mortgages and the debts secured thereby represent such an interest of the Lawyers Mortgage Company in the property so subject to the lien and claim of the plaintiff that they may be impressed with plaintiff's lien.  Appellant contends not only that the most favorable relief that respondent could have had under section 22 of the Lien Law would be a

judgment that its mortgages are second in order to the rights of the lienors but also that when the Montague Construction Company foreclosed its mortgage and sold the land, the plaintiff and all other creditors lost their liens and their remedy under such section. Respondent contends that the lienors are entitled to resort to appellant's mortgages and the debt secured thereby as a source from which to obtain payment for their work and material.

Cullen, Ch. J., said in the *Pennsylvania Case (supra)*: " It has been held by the Supreme Court that no privity exists between a lienor and a person who has agreed to make the owner a building loan, and that such agreement could not be enforced at the instance and for the benefit of the lienor, and that ruling has been approved by this court. (*Alyea* v. *Citizens' Savings Bank*, 12 App. Div. 574; affd., on opinion below, 162 N. Y. 597.) The case arose, however, before the enactment of chapter 418 of the Laws of 1897, which first dealt with the subject of building loan contracts and required them to be in writing and to be filed in the county clerk's office. As originally enacted it applied only to contracts for such loans when made on the sale of lands; as amended in 1900 it applied to all agreements for building loans. It is contended, not without force, that the doctrine of the case cited is no longer applicable, and the case of *Anglo-American S. & L. Assn.* v. *Campbell*, decided by the Court of Appeals of the District of Columbia (13 Appeal Cases, D. C., 581; 43 L. R. A. 622) is cited as an authority for the proposition that a lienor may resort to the unpaid portion of a building loan for the satisfaction of his lien. Assuming, without deciding, the correctness of the proposition contended for, it may well be that an agreement for the diversion of the proceeds of a loan to other purposes than the improvement of the property would be of so vital a character and so affect the security of contractors and materialmen as to require it to be incorporated in any agreement for a building loan." (p. 42.)

Luminous as is the suggestion thus made, that there may be limits to the right of the borrower in privity with the lender, to use the proceeds of a building loan to pay debts due to the lender and others and thus defeat the rights of the lienors, the question here to be decided involves a different principle. This is not a case of the omission of a vital part of an agreement as filed. It is not a case of intentional or constructive fraud or deception in making the contract filed misleading as to contractors and materialmen relying thereon. The remedy here is statutory and does not rest on privity between appellant and respondent. As the agreement of October 13, 1915, was not filed, the contractors did not have the statutory notice of the existence of an agreement which would impair the validity of their liens by diverting the value which they put into the property by their labor and materials to the payment of other obligations. Plaintiff began its work December 9, 1915, and completed it on May 24, 1916, when it had a right to rely on the credit of the property as enhanced by the value of the improvements thereon. Its rights are, therefore, to be determined by relation to the original contracts and such rights are not affected or impaired by the filed modification thereof. (Lien Law, § 22.) If the first building loan agreement had been on file, plaintiff might have required payment in advance or other security. The agreements filed May 31, 1916, were executed as modifications of the earlier agreement. Had the agreement of October 13, 1915, been filed, then so far as the $85,000 advanced thereon represents money that went to reduce prior incumbrances on the premises, the appellant's mortgages would equitably have been entitled to priority under the decision in the *Pennsylvania Case* (*supra*). The purchase-money mortgage for $77,000 made by the Montague Construction Company to Catherine A. Peck and the second purchase-money mortgage from the Arden Construction Co., Inc., to the Montague Construction Company above referred to, both

expressly provide for the securing of building loans upon the premises for the exact amount covered by the agreement of October 13, 1915, and further expressly provide that if the building loans should be procured and certain payments made upon account of a certain amount of each mortgage, the balance would be subordinate to such building loan bonds and mortgages and they were of record before the plaintiff made its contract to dig the cellars. But, having failed to file the building loan agreement of October 13, 1915, the appellant must suffer the consequences. Actual knowledge of the agreement is not a substitute for the filing. " It does not avoid such liability to say that the materialman knew of its provisions, although not filed. The statute absolutely and unconditionally prescribes the penalty which shall follow the failure to file such a paper." (Hiscock, J., in *Packard* v. *Sugarman*, 31 Misc. Rep. 623, 625.) Its mortgages must be subordinated in point of time exactly as if in fact the liens came first and its mortgages came second. In that position it might have protected both itself and the lienors. It might have discharged the liens and charged the amounts paid for that purpose against the owner of the premises on account of advances.

But the relief granted by the court below is improper. The Lien Law (§ 22) means literally that if the building loan contract is not filed " the interest of each party to such contract *in the real property* affected thereby, is subject to the lien and claim of a person who shall thereafter file a notice of lien." The court may give effect to this salutary provision only according to its fair intent and meaning. A debt secured by mortgage is not an interest in real estate. The mortgage is a lien given as security for the debt. When the mortgage, prior in time of record, becomes subject to a mechanic's lien, prior in law, the mortgage is subordinated thereto as an incumbrance on the real estate, but the lien does not attach to the mortgage debt nor to the mortgage itself, which is an

incident to the debt.   The theory of obligation, express or implied, to discharge the lien is not the theory of the statute.   " Subject to " as used in this connection is synonymous with " subordinate to " or " inferior to."   It does not import that the subsequent lienor shall have a lien on the first lien itself or that the prior mortgagee shall pay the debt.   (*Smith* v. *Cornell*, 111 N. Y. 554.)

On August 7, 1916, the Arden Construction Company was duly adjudged a bankrupt.   Having failed to proceed with the erection of the buildings, it had been notified on June 3, 1916, that the Lawyers Mortgage Company had elected to declare due its said bonds and mortgages, dated May 26, 1916.   The plaintiff finds itself in an awkward predicament through no fault of its own.   It is in danger of losing its lien by being put last where it, with the other lienors, should be first.   The protection of the statute is being taken from it when it comes clearly under such protection.   The rights of all parties might have been effectively adjudged in the foreclosure action of the Montague mortgage.   That was the first forum and the proper forum in which to establish all equities and priorities.   The Lawyers Mortgage Company and other prior incumbrancers became necessary parties to that action when it appeared that this plaintiff, defendant in the foreclosure action, claimed priority to them under the statute.   Without their presence a complete determination of the controversy could not be had.   (Code Civ. Pro. § 452.)   They were within the description of " persons not parties, whose rights must be ascertained and settled before the rights of the parties to the suit can be determined."   (*Chapman* v. *Forbes*, 123 N. Y. 532, 537, 538.)

As the judgment of mortgage foreclosure was appealed from and the appeal is pending, it may not be too late to preserve the prior liens from extinction.   If they are lost, it will be in a maze of legal inconsistencies.

The judgment herein should be reversed and a new trial should be granted, with costs to abide the event.

CRANE, J. (dissenting).   Apparently all agree that the lienors have a right as against the first mortgagee, and that the mortgage value should not be increased by the work and material which the workmen have put into the property.   If this be so, and the question remaining be one of remedy, I cannot see why the plaintiff should be relegated to the second mortgage foreclosure suit to which the first mortgagee was not a party.   Relief can be, in my opinion, and should be granted in the present action.

I, therefore, dissent.

HISCOCK, Ch. J., HOGAN, CARDOZO, McLAUGHLIN and ANDREWS, JJ., concur with POUND, J.; CRANE, J., reads dissenting memorandum.

Judgment reversed, etc.