J. W. VAN COTT & SON, Plaintiff, v. RAY L. GALLON, Defendant.

County Court, Delaware County, August 7, 1937.

*Becker, Jackson & Farone [Albert E. Farone* of counsel], for the plaintiff.

*Harry M. Walton [Homer D. Owens* of counsel], for the defendant.

O'CONNOR, J. The above-entitled matter has been submitted to this court upon an agreed statement of facts to hear and determine:

(1) Whether or not a mechanic's lien filed by the plaintiff against the property of the defendant on July 3, 1937, is valid, and, if so, for how much and to what it attaches.

(2) Whether or not the plaintiff has any right of action against the owner under the covenant contained in the building loan agreement and particularly the clause which provides that " the borrowers * * * covenant that they will receive the advances made under this agreement and secured by the mortgage to be given in accordance with the terms of this agreement, as a trust fund, to be applied first for the purpose of paying the cost of improvement, and that they will apply the same first to the payment of the cost of improvement before using any part of the total of the same for any other purpose," and

(3) To determine any and all other matters affecting the rights and obligations of the lienor and the owner.

The following is the statement of facts submitted and agreed upon between the parties hereto:

Ray L. Gallon, by occupation a corporal of Troop C, New York State Police, residing at Sidney, Delaware county, State of New York, purchased from Johanna D. Comfort a vacant building lot on West Main street, in the town of Sidney, county of Delaware, and State of New York, by two deeds dated and recorded as follows: Deed dated July 13, 1936, recorded in Delaware county clerk's office on July 16, 1936, in liber 238 at page 475; deed dated September 25, 1936, recorded in Delaware county clerk's office on February 15, 1937, in liber 239 at page 413.

Thereafter, and on or about the 8th day of October, 1936, the said Ray L. Gallon entered into a written contract with one Oscar Wright, general contractor, for the construction upon said building lot of a residence consisting of five rooms and bath of the semi-bungalow type, constructed of stone, brick and frame, with a one-car garage attached, for the sum of $4,900, to be paid in installments as follows:

" $500 to be paid when foundation walls are complete and first Federal Housing Administration inspection is O. K.;

" $1,700 to be paid when siding and other material is on walls and roof is on;

" $1,800 to be paid when garage walls and roof are complete and second FHA inspection is O. K., plastering done and building totally inclosed;

" $900 to be paid on final inspection of FHA."

Thereafter, and on or about the 2d day of February, 1937, said Ray L. Gallon and Nora O. Gallon, his wife, mortgaged said premises to the First National Bank in Sidney by an instrument in writing, dated February 1, 1937, acknowledged February 2, 1937, and recorded February 15, 1937, in liber 132 at page 510 in the Delaware county clerk's office, for the sum of $4,500; that said mortgage was what is termed as a Federal Housing Administration mortgage on forms prepared by said Federal Housing Administration.

Thereafter, and on or about the 8th day of February, 1937, the said Ray L. Gallon and Nora O. Gallon, his wife, as borrowers, entered into a building loan agreement with the First National Bank in Sidney, as lender, by an agreement in writing dated February 1, 1937, acknowledged February 8, 1937, and filed in the Delaware county clerk's office February 15, 1937, whereby the lender agreed to advance said sum of $4,500 for the construction on said premises of the building hereinabove referred to under certain terms and conditions contained in said building loan agreement in the following sums and at the following times:

First advance. The lender will advance to the borrowers after receipt from the Federal Housing Administration of certificate of satisfactory completion of work covered by the first inspection and after the foundation walls have been completed, the sum of $500.

Second advance. The lender will advance to the borrowers forty per cent of the contract price, less the previous advance, when the siding or other material used on the walls and the roof is on and completed.

Third advance. The lender will advance to the borrowers forty per cent of the toal loan upon receipt of the Federal Housing Administration certificate of satisfactory completion of the work required under its rules and regulations for the second inspection and when the building is plastered and totally inclosed, including installation of windows and when one coat of paint has been applied to the outside of the building.

Fourth advance. The lender will loan to the borrowers the balance of the loan when all the work required under the plans

and specifications and contract has been completed and approved by all parties and upon receipt of the Federal Housing Administration certificate of satisfactory completion of all the work required for the final inspection.

On or about October 10, 1936, the said owner, Ray L. Gallon, advanced to the said general contractor, Oscar Wright, at his request, the sum of $100, which the owner later learned was used by said Wright to purchase a motor of H. R. Lewis and used on a saw by him for sawing lumber on the construction of said buildings.

Pursuant to the terms of said general contract with Oscar Wright, general contractor, the said Wright began the construction of said building in accordance with the terms thereof on or about October 16, 1936.

The first material is claimed to have been delivered to said job by J. W. Van Cott & Son, Inc., on December 22, 1936.

On or about the 20th day of December, 1936, the Federal Housing Administration made its first inspection and approved the work to that stage.

On or about the 30th day of December, 1936, the owner, Ray L. Gallon, had a settlement with the general contractor, Oscar Wright, on the first advance, and paid him in full to that date, less the $100 previously advanced to him on October 10, 1936, at which time the work on the construction had progressed to the stage called for by the contract, to wit, the foundation walls were complete and the first FHA inspection had been made and was satisfactory.

At that time it appears that the Van Cott bill for material claimed to have been furnished to said job amounted to nineteen dollars and twenty-six cents.

Thereafter, and on or about the 1st day of April, 1937, the owner, Ray L. Gallon, had a settlement with the general contractor, Oscar Wright, on the second advance and paid him in full to that date, with the exception of $200, which was retained until certain specific items of work were completed which could not be completed at that time by reason of weather conditions (which were paid to said contractor as said work was completed, $100 on April 23, 1937, and the remaining $100 on May 6, 1937), at which time the work had progressed to the stage called for by the contract, to wit, the siding and other material was on the walls and the roof was on.

At that time it appears that the Van Cott bill for material claimed to have been furnished to said job since the date of the last advance amounted to $863.83, plus the previous amount of $19.26.

On or about April 16, 1937, the said owner, Ray L. Gallon, paid to the said general contractor, Oscar Wright, the sum of $100 at his request, which the contractor stated he needed to pay to Hulbert on his plumbing bill.

On or about the 23d day of April, 1937, the Federal Housing Administration made its second inspection and approved the work to that stage.

On Saturday, May 15, 1937, the said owner, Ray L. Gallon, paid to the said general contractor, Oscar Wright, the sum of fifty dollars at his request, which the contractor stated he needed to pay the plasterers for labor.

On Saturday, May 29, 1937, the said owner, Ray L. Gallon, paid to the said general contractor, Oscar Wright, the sum of fifty dollars at his request, which the contractor stated he needed for laborers' wages.

On or about the 12th day of June, 1937, the owner, Ray L. Gallon, had a settlement with the general contractor, Oscar Wright, on the third advance, and paid him in full to that date, at which time the work on the construction had progressed to the stage called for by the contract, to wit, the garage walls and roof were completed, the second FHA had been made and was satisfactory, the plastering was done and the building totally inclosed.

At that time the owner, Ray L. Gallon, asked said contractor, Oscar Wright, if the W. A. Case & Son Manufacturing Company bill of $268.58 for plumbing fixtures had been paid, which had been guaranteed by the owner, for the reason that said Case Company would not furnish the plumbing fixtures unless he did.

Said contractor stated that said bill had not been paid and also that he owed the Van Cotts a little over or about $400 and the Binghamton Slag Roofing Company $69.98.

Thereafter the said Ray L. Gallon paid to the said Oscar Wright, general contractor, the sum of $940, the balance due the contractor in accordance with the terms of said contract.

At that time it appears that the Van Cott bill for material claimed to have been furnished to said job since the date of the last advance amounted to $487.12, plus the previous amounts of $19.26 and $863.83.

That on the 28th day of June, 1937, at nine A. M., said Oscar Wright, general contractor, verbally stated to the said Ray L. Gallon, owner, that he was unable to complete the construction of said residence and would default in the performance of his contract dated October 8, 1936, and that he did then and there default and has not since performed or attempted to perform or complete the same in any manner whatsoever, except that the painters did

work all of that day, all of the next day, and until noon of Wednesday, June 30, 1937, after which no one worked on said job

Thereafter, and on or about the 28th day of June, 1937, at eleven-thirty A. M., there was filed at the county clerk's office at Delhi, N. Y., a mechanic's lien by J. W. Van Cott & Son, Inc., which was void on the face thereof for the reason that it appeared in said lien that the last material was furnished January 22, 1937, for the sum of $1,415.06 for materials furnished to the said Oscar Wright and claimed by the said Van Cott & Son to have been used in the construction of said building and which was for all of the materials furnished by the said Van Cott & Son to the said Wright and claimed to be used in the construction of said residence from December 22, 1936, to June 22, 1937, both dates inclusive.

Thereafter, and on or about the 3d day of July, 1937, there was filed in the Delaware county clerk's office a mechanic's lien by J. W. Van Cott & Son, Inc., and against the said Oscar Wright and Ray L. Gallon for the sum of $1,415.06 for materials claimed to be furnished by J. W. Van Cott & Son, Inc., to Oscar Wright, contractor, for use by him in the construction of this residence.

Exhibit 7 is a statement of the items of work yet to be completed and the approximate cost thereof, based on estimates made for the owner or by the owner as therein stated.

On the 6th day of July, 1937, the said Oscar Wright, general contractor, confirmed said verbal default of June 28, 1937, by an instrument in writing, delivered to said Ray L. Gallon, owner.

The said J. W. Van Cott & Son, Inc., their agents or representatives, never gave any written or verbal notice to the owner of the furnishing of materials for this job or that they had not been paid therefor until on or about June 12, 1937, after the payment of the sum of $940 had been paid.

As to the validity of the mechanic's lien, the materials furnished by the plaintiff were furnished at the request of Wright, the contractor, and this entitled the plaintiff to a lien upon the property of the defendant (Lien Law, § 3) for a sum not greater than the sum earned and unpaid on the contract at the time of filing the notice of lien and any sum subsequently earned thereon (Lien Law, § 4).

The plaintiff's mechanic's lien was filed July 3, 1937. On June 2, 1937, the defendant paid Wright, the contractor, the sum of $940, the amount due the latter according to the terms of the contract between defendant and Wright, less moneys previously advanced by defendant to Wright. While the defendant had made advances to Wright on several occasions during the course of the construction of the building before they were due under the contract, when he made the payment of $940 on June 12, 1937, Wright

had not received from the defendant any more than was due him under the contract according to its terms. There being nothing due to Wright under the contract at the time plaintiff's lien was filed, it is not enforcible against the property of the defendant unless there was a sum subsequently earned thereon by Wright.

Mr. Justice VANN, in *Van Clief* v. *Van Vechten* (130 N. Y. 571), states the following rules which determine the extent to which a mechanic's lien, filed by a subcontractor or a materialman, attaches to the *locus in quo:*

" 1. If anything is due to the contractor, pursuant to the terms of the contract, when the lien is filed, it attaches to that extent.

" 2. If nothing is due to the contractor, according to the contract, when the lien is filed, but a certain amount subsequently becomes due thereunder, the lien attaches to the extent of that sum.

" 3. If nothing is due to the contractor pursuant to the contract, when the lien is filed and he abandons the undertaking without just cause, but the owner completes the building according to the contract and under a provision thereof permitting it, the lien attaches to the extent of the difference between the cost of completion and the amount unpaid when the lien was filed."

Under the circumstances in this case and the rules above stated, the fact that the defendant had advanced money to Wright on previous occasions is immaterial, even though Wright used the money for other purposes than paying the plaintiff for materials furnished or laborers for their work.

Plaintiff claims that these advances and the payment which defendant made on June 12, 1937, to Wright come within the provisions of section 7 of the Lien Law, which provides that any payment made by the owner prior to the time when, by the terms of the contract, such payment becomes due, for the purpose of avoiding the provisions of the Lien Law, shall be of no effect against the lien of a materialman under such contract created before such payment actually becomes due. We fail to see how the payment made by the defendant to Wright on June 12, 1937, comes within the provisions of this section. Wright was absolutely entitled under his contract to the amount paid by the defendant to Wright on June 12, 1937. Plaintiff did not file its lien until July 3, 1937. Therefore, the plaintiff cannot successfully contend that the payment on June 12, 1937, was for the purpose of avoiding the provisions of the Lien Law because Wright received no advance payment but the amount due under his contract and no more. (*Streever Lumber Co.* v. *Mitchell*, 183 App. Div. 129.) The burden was upon the plaintiff to establish that the payment was made in advance and in bad faith. (*Rukeyser* v. *Fountain & Choate, Inc.*, 185 App. Div. 263; *Reilly & Co., Inc.*, v. *Scheer*, 125 Misc. 832.)

That defendant knew that Wright was indebted to plaintiff for materials plaintiff had furnished Wright at the time defendant made the payment on June 12, 1937, is not sufficient to charge the defendant with bad faith or make plaintiff's lien valid as to the amount of the payment due at that time. Plaintiff knew that Wright was entitled to the payment of installments under the contract at different stages in the construction of the building. By inspection or inquiry it could easily ascertain when the installments would be paid. It knew the amount of Wright's indebtedness to it. It gave no notice, written or verbal, to defendant that it had not been paid for the materials it had furnished at the time the different installments were due and paid according to the contract. If it desired to protect itself it should have filed a lien. The defendant was not bound to ascertain if Wright had paid his laborers and materialman prior to the time that the defendant made his payment to Wright. (*Glens Falls P. C. Co.* v. *Schenectady County Coal Co.*, 163 App. Div. 757; *Streever Lumber Co.* v. *Mitchell, supra; Wagner* v: *Butler*, 155 App. Div. 425.)

It appears that the cost of completing the building will equal or exceed the amount remaining unpaid upon the contract. The plaintiff is not entitled to a lien upon the balance unpaid upon the contract. Even if the amount unpaid on the contract exceeds the cost of completion, the plaintiff is not entitled to any lien, because Wright abandoned his contract. (*Herrman & Grace* v. *Hillman*, 203 N. Y. 435; *Sealy Co., Inc.*, v. *Ards Bldg. Corp.*, 216 App. Div. 313.)

Plaintiff contends that, even if the lien it filed is not valid as to the moneys which have been paid by defendant or are still unpaid by him, it is entitled to recover because the building loan agreement provides that the advances made to the defendant under it were received by him as a trust fund to be applied first for the purpose of paying the cost of improvement and that he would apply the same for that purpose before using any part of the same for any other purpose.

Plaintiff calls our attention to section 2 of the Lien Law, which defines " cost of improvement " as " expenditures incurred by the owner in paying the claims of the contractor, an architect, engineer or surveyor, a sub-contractor, laborer and materialman, arising out of the improvement."

In our opinion the defendant applied the advances made by the National Bank in Sidney to the payment of the cost of improvement when he made the payments to Wright, the contractor. That Wright used some of the moneys which the defendant paid him for other purposes does not make defendant a violator of the terms

of the agreement. While it is true that the statute provides that the cost of improvement means expenditures incurred by the owner in paying the claims of a subcontractor, laborer *and* materialman and not a subcontractor, laborer *or* materialman, it does not follow that the owner is obligated not only to pay the contractor, but also a subcontractor, laborer and materialman to whom the contractor is indebted. If this were true the defendant would have to ascertain all the persons who had furnished labor or material to the contractor, the amount the contractor was indebted to each one, and pay each of them in full before he paid any money to the contractor. Neither the statute nor the provisions of the building loan agreement places such a burden upon the defendant.

Plaintiff also contends that the defendant was not protected in paying the expenses incurred in connection with the making of the loan, amounting to $211.15. The answer to this is that the building loan agreement provided that the lender should deduct all the expenses incurred in connection with the mortgage to be given by the defendant, including all disbursements and all attorneys' fees in connection therewith. Moreover, section 2 specifically provides that cost of improvement shall also include fair and reasonable sums paid for obtaining building loans and subsequent financing.

The object of section 22 of the Lien Law, requiring contracts for building loans to be in writing, acknowledged and filed, is to acquaint prospective contractors with the fact that they furnish labor and materials subject to claims prior to theirs so far as advances thereunder are prior to their liens under section 13, and to inform such contractors of the amounts to be advanced and the time of such advances. (*McDermott, Inc.*, v. *Lawyers Mortgage Co.*, 232 N. Y. 336.) It does not place upon the owner the burden of seeing that the contractor pays the moneys, which the contractor receives, to his laborers and materialman.

Plaintiff also claims to be entitled to recover against the defendant by reason of the clause in the contract between the defendant and Wright which reads as follows: " General contractor is to and will pay all bills for materials and labor with the respective cash advance received from owner. The intent being that the general contractor is to and will keep all bills for materials and labor paid as the construction of the building progresses, and that he will not be entitled to a subsequent cash advance as long as any bills for materials and labor remain unpaid which should have been paid with the preceding cash advances."

At the time the defendant made the last payment to Wright on June 12, 1937, he was informed by Wright that he owed the plaintiff about $400. Defendant had a right to rely upon this

statement as being true. After this statement had been made by Wright to defendant the latter paid Wright $940, which was sufficient for Wright to pay the plaintiff the $400 which Wright said was due from him to the plaintiff. Defendant had a right to assume that this $400 was due plaintiff for materials delivered by plaintiff to Wright subsequent to the last preceding payment, and that there was no sum due to plaintiff from Wright for materials and labor which should have been paid with the preceding cash advanced.

The difficulty with the plaintiff's case is that it was guilty of laches in failing to file a lien prior to the time that the payments were made by the defendant to Wright or in, at least, notifying defendant, prior to the time that the advance moneys were due, of the amount that Wright was indebted to plaintiff. Plaintiff is seeking to impose upon the defendant the duty of extraordinary diligence while it has been guilty of gross laches on its part. Neither the provisions of the statute nor any of the contracts in this case place any such burden upon the defendant.

The plaintiff's lien is not valid nor enforcible against the defendant nor has it any right of action against the owner under the provisions in the building loan agreement or otherwise.

Judgment may be entered accordingly, without costs.