In re 455 CPW ASSOCIATES, Debtor.

HERBERT CONSTRUCTION
COMPANY, INC.,
Plaintiff,

v.

The GREATER NEW YORK SAVINGS
BANK, Defendant.

Bankruptcy 94 B 45399.
Adv. No. 95/1354A.

United States Bankruptcy Court,
S.D. New York.

Feb. 7, 1996.

Ross & Cohen, LLP by Gerard Romski, New York City, William L. Barish, Mt. Kisco, New York, for Herbert Construction Company, Inc.

Herrick, Feinstein LLP by Raymond N. Hannigan, New York City, for The Greater New York Savings Bank.

### MEMORANDUM DECISION ON MOTION TO DISMISS COMPLAINT

BURTON R. LIFLAND, Chief Judge.

Herbert Construction Co., Inc. ("Herbert") commenced this adversary proceeding against The Greater New York Savings Bank (the "Greater") seeking to have the Greater's mortgage lien subordinated to Herbert's mechanic's lien. Herbert maintains that its mechanic's lien for construction work at the

building is entitled to priority over the Greater's earlier-filed mortgage because the Bank failed to file a building loan contract as required by section 22 of the New York Lien Law.

The Greater seeks an order (a) pursuant to Bankruptcy Rule 7012, dismissing the complaint with prejudice and (b) pursuant to Bankruptcy Rule 9011, imposing sanctions for the filing of an erroneous complaint.

### Background

In December 1988, The Greater made the first of two loans to 455 CPW Associates (the "Debtor"). As part of the acquisition of the Property by the Debtor, the Greater lent $19,350,000 (the "1988 Loan"), $13,535,000 of which was used to pay off existing mortgage loans and obtain an assignment of the mortgages from the preceding lenders. The second loan was made less than a year later, in August 1989 (the "1989 Loan", and together with the 1988 Loan, the "Greater Loan"). Pursuant to the 1989 Loan, the Greater lent the Debtor an additional $4 million secured by an additional mortgage, which was combined and consolidated with the existing mortgages to create a consolidated first mortgage lien of $23,350,000.

Herbert commenced construction work at the premises the month after the 1989 Loan Agreement was signed. Herbert subsequently filed a $523,997.46 mechanic's lien against the Property for the construction work it had performed on November 13, 1990.

Herbert's complaint alleges that some or all of the proceeds of the 1988 Loan were intended to pay for the improvement of the Premises; that the 1988 and 1989 mortgages are building loan mortgages; that the Greater entered into agreements constituting building loan agreements pursuant to which the Greater made loans of $5,815,000 and $4 million to the Debtor; that neither mortgage was properly filed with the county clerk in accordance with Lien Law 22; and that, as a consequence, Herbert's mechanic's lien is entitled to priority over the Greater's mortgage.

The Greater argues that the complaint should be dismissed because, among other things (i) the Greater mortgage was recorded prior to Herbert's purported mechanic's lien; (ii) Herbert has failed to plead the existence of a building loan contract as required by the Lien Law; and (iii) Herbert failed to personally serve notice of lien.[1]

### Discussion

▇ A motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) can be granted only where it appears certain that no set of facts could be proven at trial which would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957) *cited in Neitzke v. Williams* 490 U.S. 319, 326, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); *see also Goldman v. Belden*, 754 F.2d 1059, 1065 (2d Cir. 1985); *In re O.P.M. Leasing Services, Inc.* 21 B.R. 986, 991 (Bankr.S.D.N.Y.1982). All well-pleaded factual allegations must be read by the court as true and construed liberally in favor of the plaintiff. *Conley*, 355 U.S. at 47, 78 S.Ct. at 102–03; *Allen v. WestPoint–Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir.1991); *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). The focus of the inquiry is whether the pleading is sufficient to entitle the claimant to offer evidence in support of his claims, not the likelihood of plaintiff's success. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Werner v. Satterlee*, 797 F.Supp. 1196, 1206 (S.D.N.Y.1992).

▇ Fed.R.Civ.P. 12(b)(6) requires that the court evaluate only those allegations made in the complaint, or in other documents attached or incorporated into the complaint by reference. *Cosmas* 886 F.2d at 13. If the court is to consider facts presented apart from the complaint which do not fall into any of the above-mentioned exceptions, the court must either exclude the extraneous material and decide the motion based solely on the pleadings, or the court may change the motion to one for summary judgment pursuant to Fed.R.Civ.P. 56 and allow all the parties to submit additional information. *Kopec v.*

---

1. Because this decision determines the sufficiency of the complaint on the merits, it is not necessary to address the remaining issue of validity of service of the notice of lien.

*Coughlin III*, 922 F.2d 152, 154 (2d Cir.1991) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969 & Supp.1986)). While both parties have submitted additional materials in support of their positions, the motion can be decided on the basis of the loan documents referred to in the Complaint.

*New York Lien Law*

■ Priorities between mortgages and liens are governed by the New York Lien Law and by case law. The general rule is that a mechanics' lien is subordinate to a prior recorded mortgage. New York Jur2d, Mechanics Liens, § 139 Mortgages Generally (1989).

■ The main purpose of the statute is to protect contractors and materialmen from deception by lenders, owners, builders, etc. by alerting contractors to the fact that they furnish labor and materials subject to claims prior to theirs against the property, so far as advances thereunder are prior to the liens when filed, and also to inform such contractors of the amounts to be advanced and the times of such advances. *P.T. McDermott, Inc. v. Lawyers' Mortgage Co.*, 232 N.Y. 336, 341–42, 133 N.E. 909 (1922); J.M. Lampiasi, *Loss of Mortgage Priority to Mechanics' Liens*, (PLI Real Estate Law and Practice Course Handbook Series 1989).

■ In that regard, section 22 of the New York Lien Law requires that a building loan contract and any subsequent modifications thereto must be filed in the Office of the County Clerk where the project is located within ten days after the execution or the making of the modification. N.Y.Lien Law § 22 (McKinney's 1995). Failure to comply with the filing requirements will result in the interests of each party to the building loan contract being subordinated to the claims of persons who thereafter furnish labor and materials to the project. *Id.; In re Lynch III Properties Corp.*, 125 B.R. 857 (Bankr. E.D.N.Y.1991). Purchase money mortgages, on the other hand, are exempted from the operation of the New York Lien Law provided that the mortgage is recorded prior to the filing of the lien and that the instrument of conveyance contains the trust fund covenant.

Baxter Dunaway, *The Law of Distressed Real Estate*, Appendix 27D (Clark Boardman Callaghan 1985–1992) (citing NYJur2d, *Mechanics Liens*, § 142 (1989)). This means that a purchase-money mortgage given upon the acquisition of title by the purchaser, as part of the transaction, is ordinarily entitled to priority over a mechanic's lien furnished to the vendor or owner, and a mechanic's lien accruing after the execution and recording of the purchase-money mortgage is ordinarily subordinate thereto. NYJur2d, *Mechanics Liens*, § 141 Purchase Money Mortgages.

■ Herbert argues that the Greater Loan is actually a building loan contract within the meaning of section 22 of the NY Lien Law because the Greater's Project Loan Agreements indicate that the loans were intended to fund not only acquisition but also partial development of the building by expressly calling for use of loan proceeds to pay for lienable "improvements," engineering and architectural work, and contemplate loan advances against "miscellaneous" expenses and "contingency" work. Additionally, Herbert points to (a) paragraphs 13 of the 1988 and 1989 Loan documents which state that advances will first be applied to paying costs of improvements (as defined in Section 2 of Lien Law) and (b) paragraph 2 of the 1989 Loan documents provides for advances after proof of expenditures. Herbert also asserts that the parties to the Greater Loan considered the loans as construction loans. However, Herbert fails to point to any express promise within the loan documents, to improve the property.

■ A "Building Loan Contract" is defined in section 2(13) as:

a contract whereby a . . . "lender" in consideration of the express promise of an owner to make an improvement upon real property, agrees to make advances to . . . such owner to be secured by a mortgage on real property . . .

N.Y.Lien Law § 2(13) (McKinney's 1995). Accordingly, for a mortgage to be construed as a building loan contract, requiring filing under section 22, there must be an express contract to improve property. *Amsterdam Sav. Bank v. Terra Domus Corp.*, 97 A.D.2d

41, 470 N.Y.S.2d 448, 450 (N.Y.A.D.1983). Contrary to Herbert's assertions, under New York case law, that express promise must be contained in the governing loan documents.

In *Weaver Hardware Co. v. Solomovitz*, 235 N.Y. 321, 139 N.E. 353 (1923), the New York Court of Appeals addressed the question of whether a loan agreement, pursuant to which funds were to be advanced in installments as needed in the construction of a building, was a "building loan agreement" within the meaning of section 22. The court noted first that:

> [W]e have the simple transaction of a mortgage given to secure a loan for the purpose of erecting a building and to be advanced in installments from time to time as might be rendered safe by the condition of the building. **There is no agreement upon the part of the borrower and mortgagor to erect any building and no expression of any details such as would be appropriate to an agreement whereby one party agreed to erect and the other party agreed to loan money for such erection.** We shall assume without deciding that the bona fide holder for value of the notes given under such circumstances and arrangement as this would be subjected to the penalties of section 22 if this was as between the original parties a building loan agreement, and we pass to the consideration of that specific question.
>
> All that we have here is a loan of money secured by mortgage for the purpose of putting up a building and to be advanced from time to time in installments....
>
> Under such circumstances, unless it has clearly expressed the intent so to do, we ought not assume that the Legislature intended to interfere with loans of this kind or impair their security or require that the mortgagee in such a loan, in addition to the requirements for recording, to reduce to writing an agreement to make the loan, and then file it in the office of the county clerk, where already the mortgage was placed on record. We do not believe that either the words or conceivable purpose of section 22 calls upon us to give to it any such construction.

*Id.* at 334–35, 139 N.E. 353 (emphasis added). In concluding that the loan in question was not a building loan contract, within the meaning of section 22, absent an express promise, the Court stated that:

> We are inclined to think that in making these enactments the Legislature had in mind a mutual agreement whereby one party agreed to erect buildings and the other party agreed to make loans for the purpose of such erection.... An agreement for a building loan—that is, to make a loan for building purposes—might be in a form which would not come within the recording acts and which might be a source of danger to subsequent materialmen unless placed on file as required by this section..... In our opinion **the section in question was intended to guard against such a situation and danger as that, and not as against an ordinary mortgage to secure future advances, and which by recording would give ample notice to materialmen.**

*Id.* at 335–36, 139 N.E. 353 (emphasis added). *See also, PT McDermott, Inc. v. Lawyers' Mortgage Co.*, 232 N.Y. at 333–34, 133 N.E. 909 ("essentials for a complete contract for a building loan" included, among other things, terms which specifically provided that the borrower agreed to erect buildings and such buildings were described in the loan documents); *Amsterdam Sav. Bank v. Terra Domus Corp.*, 470 N.Y.S.2d at 450 (express promise is required for there to be a building loan contract); *Finest Investments v. Security Trust Co. of Rochester*, 96 A.D.2d 227, 468 N.Y.S.2d 256, 257 (N.Y.A.D.1983) (agreement which did not require mortgagor to construct any building or improvement on the property and loan which was not to be advanced in installments, but in one lump sum, was not a building loan mortgage); *Sullivan v. Young*, 95 Misc. 658, 159 N.Y.S. 791, 793 (N.Y.Sup. 1916) ("In order that there may be any valid contract for a building loan, by the very terms of the act such contract must be in writing, and acknowledged, so as to entitle it to be recorded. If any such agreement rests in parol, it is invalid and of no effect, and constitutes in law no contract whatever for a building loan."); *Syracuse Capital Corp. v. Pattison Const. Corp.*, 133 Misc. 894, 234

N.Y.S. 68 (N.Y.Sup.) *aff'd,* 227 A.D. 652, 235 N.Y.S. 895 (1929).

Similarly, in *Syracuse Capital Corp.,* the Court looked at an instrument entitled "Building Loan Agreement" which was a supplementary document to a bond and mortgage. The instrument contained clauses stating that the defendant was constructing 19 dwellings, wished to obtain funds during the progress of the construction and would complete the buildings with the proper materials and good workmanship. The Court found, however, that the agreement failed to set forth a "mutual agreement" and lacked the essential details of a building loan contract. Instead, the court found that the agreement involved only a mortgage to secure future advances and, as such, did not fall within section 22. *Id.*

In sum, it is clear from the relevant loan documents that the Greater Loan is not a Building Loan Contract within the meaning of section 22 of the Lien Law. Moreover, the purpose behind the Lien Law statutes has not been subverted here. The Greater's mortgage was not a secret, it was recorded as an ordinary mortgage. Similar to the *Syracuse Capital Corp.* case, Herbert "performed the labor and furnished the materials with full knowledge that, with respect to any advances made on the mortgage prior to the filing of notice of mechanics' lien, the mortgage would be superior." *Syracuse Capital Corp. v. Pattison Const. Corp.,* 234 N.Y.S. at 73.

Accordingly, the motion to dismiss is granted.

*Sanctions*

 The imposition of sanctions is appropriate:

> where it is patently clear that a claim has absolutely no chance of success under the existing precedents, and where no reasonable argument can be advanced to extend, modify, or reverse the law as it stands.

*Eastway Construction Corp. v. City of New York,* 762 F.2d 243 (2d Cir.1985), *cert. denied* 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987). Upon review of Plaintiff's prior counsel's affidavit and giving prior counsel the benefit of the doubt, I cannot say with the required degree of certainty that it was "patently clear that [the] claim [had] absolutely no chance of success." Therefore, the application for sanctions is denied.

Submit an order consistent with this decision.