At the date of the mortgage from Gerwig, the appellant, to Edgar Peckham, Gerwig was indebted on a mortgage to one Cyrus Peckham, in the sum of $4,314. This mortgage was then in the hands of Edgar Peckham, to whom it had been given by Cyrus, his father, in order that he might raise money of which he was in need. After an ineffectual attempt to raise money by demanding what was due upon it from Gerwig, Edgar Peckham attempted to sell it to one Wagner, who, after inquiry, declined to take it on any terms, but offered to give $3,500 for a new mortgage of the amount of $4,314, to be executed by Gerwig, secured upon nearly the same property covered by the first mortgage. In order to comply with this proposal, Edgar Peckham procured *Page 216 
an acknowledgment of satisfaction from Cyrus Peckham of the first mortgage and arranged with Gerwig that he should execute a new mortgage, as proposed, in place of the old, postponing the time when it should be payable, and also should give his note to Edgar Peckham for $400, one-half the discount to which he expected to submit on selling the mortgage to Wagner. This arrangement was carried out; Gerwig executed the new mortgage, and it was delivered to Edgar Peckham in place of the original mortgage, the satisfaction of which was put on record. Gerwig gave his note to Edgar Peckham for $400, and the latter sold the new mortgage to Wagner for $3,500. In this transaction, there was no loan of money — no borrower and no lender. The only money involved was that paid by Wagner to Edgar Peckham on the purchase of the mortgage of Gerwig. The question of usury is brought into the transaction only in the bargain between Edgar Peckham and Gerwig, for the substitution of the new mortgage at an extended time in place of the old one, and the exaction by Edgar Peckham of the note from Gerwig for $400 as a condition of the arrangement. That infected with usury the new and substituted security, and rendered it void in the hands of whoever might hold it, if the mortgagor should see fit to interpose the defence of usury when an attempt should be made to enforce it. The original mortgage was never paid, nor was it more than formally extinguished by the acknowledgment of satisfaction by Cyrus Peckham. That was executed to enable Edgar Peckham, to whom the mortgage had been given to raise money, to effect the substitution of a new security in its place. The debt of Gerwig, originally secured by the first mortgage, remained unsatisfied in fact, and no doubt can be entertained that if the second mortgage had remained in the hands of Edgar Peckham, who was the owner of the first mortgage, at the time of its being satisfied of record and the substitution of the new mortgage in its place, the defeat of it as a security on the ground of its being usurious would have revived the original debt and security, and would have entitled *Page 217 
Edgar Peckham, as against Gerwig, to enforce it. This right would, of course, have been subject to the rights of any purchasers or incumbrancers bona fide, in respect to whom the satisfaction on record would have been conclusive. It is well settled that when a valid debt exists and a usurious security is taken for it, the avoidance of the usurious security revives the debt. (Cook v. Barnes, 36 N.Y., 520; Winsted Bank v.Webb, 39 id., 325, 330.) The more difficult question is whether this right will pass by the assignment or transfer of the usurious security. That question is one in which the debtor, being bound to pay to some one, has really no interest. He has the right to insist that he will not pay the usurious security, but the real debt he must pay, and it can make no difference to him to whom he pays it, provided that such payment, when made, extinguishes his obligation. The party guilty of receiving the usury, if he had remained the holder of the usurious security could, unquestionably, on the defence to that security being established, have resorted to the original debt; and yet it would be in the highest degree inequitable, as between him and the person to whom he had transferred the security vitiated by his own usury, to allow him to enforce and retain for his own benefit the original security which only becomes capable of enforcement by the defeat of that which he had transferred. We do not think such a result required by law. The transfer of the usurious security, though in form limited to that, must be deemed to carry with it all the right of the party in respect to the debt, which was its basis, including the right to enforce the old security, in case the new one is avoided. It was never the intention of the assignor to retain anything for himself in respect to the original debt, and, indeed, nothing did remain in him after the new security was taken, except the possibility of its reviving, in case the new instrument should be defeated. This should be deemed to pass with the instrument assigned, substantially on the same principle on which the assignment of a debt carries with it the securities which are held for it, as in case of the assignment of a bond, the mortgage which *Page 218 
secures it passes as an incident, without mention. The principle involved received the sanction of the Court of Appeals, inOneida Bank v. Ontario Bank (21 N.Y., 490, 498), in which the very case was put as an example, in the opinion of the court, as leading necessarily to the judgment rendered. The learned judge says: "A note or bond may be void for usury, but being founded on some antecedent claim or contract free from that defect, there may be a just and legal right to recover the original consideration. The note or bond may be sold, and it will be void, even in the hands of an innocent purchaser; but will it be pretended that the purchaser gets absolutely nothing? It is impossible to doubt that he will stand in the shoes of his vendor." It was accordingly adjudged in that case that by the sale and indorsement of a draft void by statute, the right of action of the party who had taken the draft for the consideration paid by him, was transferred with the draft itself. The principle of that judgment must control this case. The right which existed in Edgar Peckham to set up the original mortgage, in case of the disaffirmance of the substituted and usurious security by Gerwig, must be deemed to have passed to Wagner and the other successive assignees of the Gerwig mortgage, and to have been vested in the plaintiff's testator at the commencement of the suit; subject, of course, to a deduction of the amount of $400 paid by Gerwig to Edgar Peckham as of the time of its actual payment.
The facts before stated, not found by the referee in the suit to foreclose against Gerwig and others, appear by clear and undisputed evidence, and without specifying particularly the precise exceptions taken, it is sufficient to say that the report was excepted to in several particulars for not finding facts material, in the view above taken, to the rights of the parties. It now becomes necessary to note that, although there was but one trial there were two causes: one in which Gerwig was plaintiff and Sitterly defendant, in which it was sought to enjoin the latter from foreclosing by advertisement, under the statute, the second and usurious mortgage. *Page 219 
The answer in that case claimed no affirmative relief; nor did it set up the matters before stated in such manner as to raise any other question than that of his right to be allowed to proceed in the statute foreclosure of that mortgage. The conclusions at which we have arrived on the whole case show that Gerwig had a clear right to the relief sought in the first case, and, indeed, the invalidity of that mortgage is the only foundation on which can rest the right to enforce the original mortgage. While, therefore, we think that in the suit to foreclose, brought by Sitterly's representatives, the plaintiffs ought to recover by a judgment for the foreclosure of the original mortgage, in the other suit, the object of which was to restrain the foreclosure of the last mortgage, the judgment in favor of Gerwig was right. We see no reason why that judgment should not have been affirmed at the General Term. The causes seems to have been presented in that court as they were in this, as if no distinction existed between them; and in this way it most probably was overlooked. The result is that in the case in which Gerwig was plaintiff, the judgment at General Term and the order granting a new trial must be reversed, and the judgment at Special Term affirmed. In the case of Sitterly et al., Executors, v. Gerwig and others the order granting a new trial must be affirmed, and judgment absolute must be rendered against the right of the appellants and in favor of the respondents; and the proceedings must be remitted to the Supreme Court, in order that a judgment may be there entered for the foreclosure and enforcement of the original bond and mortgage against Gerwig and all other persons, saving, however, the rights of any subsequent bona fide purchasers or incumbrancers of the property covered by that mortgage, or any part thereof, since its satisfaction of record and crediting on the amount due the $400 paid by Gerwig to Edgar Peckham, as of the time of its actual payment.
All concur.
Judgment accordingly. *Page 220