WEAVER HARDWARE COMPANY, Plaintiff, *v*. MAX SOLO-
MOVITZ et al., Defendants, GEORGE H. STALKER et al.,
Appellants, and MERCHANTS BANK OF ROCHESTER,
Respondent.

**Bills, notes and checks — usury — when notes given for loan
and building materials and secured by mortgage are dis-
counted by a bank without knowledge of an agreement by the
borrower to pay to the lender interest in excess of the legal
rate, the renewals thereof and the mortgage are purged from
usury — when contract to loan money and furnish materials
for a building in consideration of notes given therefor not a
building and loan agreement which should be filed in county
clerk's office.**

1. One of the defendants, the owner of land, desiring to erect an
apartment house obtained from a dealer in building materials a loan,
and also building material for which he executed four promissory notes
secured by a mortgage on the property. There was an agreement
between the two for the payment of interest in excess of the legal rate.
This defendant procured the notes to be discounted by the defendant
bank which had no knowledge of the usurious agreement. The
notes were from time to time renewed for a period of about a year.
The mortgage which was given to secure the originals of these notes
and all renewals thereof has been formally assigned to the bank.
Thereafter one of the parties furnishing materials obtained a second
mortgage on the property, while others filed liens against it and all
of these claim that the notes are void for usury and that the mortgage
held by the bank which secures them falls. This contention cannot be
sustained. Aside from the question presented whether the original
notes which the bank discounted in good faith for full value and
without notice of any defect constituted a good consideration for the
new notes which were made and executed by the debtor for the pur-
pose of taking them up and that when these new notes passed into
the hands of the bank they were purged of the usury which infected the
original notes and became, and that their renewals are, valid and enfor-
cible obligations, the notes discounted and held by the bank and
their renewals were purged of usury and validated under the provisions
of section 114 of the Banking Law.

2. The note given by the debtor for materials to be furnished for
the apartment house cannot be held void for usury. Under the

21

findings, the price of the goods, for which the note was given, was entirely segregated from the loans of money made by said payee, or lender, and the note was given solely and simply for such price. It is a valid obligation to the extent of the purchase price of the goods actually furnished for which it was given. As to the balance of the note there is a failure of consideration.

3. The contention, that even though the notes held by the bank are valid obligations, the mortgage given to secure this series of notes is to be considered apart from the notes and that it is infected with the usury of the original transaction and cannot now be enforced by the bank as security for the notes held by it, cannot be sustained. A mortgage given to secure notes is an incident to the latter and stands or falls with them. The mortgage in question was given to secure the original notes and all renewals thereof, but the notes in the hands of the bank were purged of usury and became valid obligations as against which neither the maker of the notes nor his subsequent grantee could urge the defense of usury. Furthermore the renewal notes taken by the bank come precisely within the terms of the mortgage which was a continuing security for the original notes and all renewals thereon and the elimination of the usury occurred before any of the liens held by the lienors accrued. The note given for the purchase price of materials as a matter of course, not having been tainted by usury, is entitled to the security and benefit of the mortgage.

4. Under the findings it must be held that this was the simple transaction of a mortgage given to secure a loan for the purpose of erecting a building and to be advanced in installments from time to time as might be rendered safe by the condition of the building; there is no agreement upon the part of the borrower and mortgagor to erect any building and no expression of any details such as would be appropriate to an agreement whereby one party agreed to erect and the other party agreed to loan money for the purpose of such erection. Hence, such transaction is not a building and loan agreement which should be filed in the county clerk's office under the provisions of section 22 of the Lien Law. (*Penn. Steel Co.* v. *Title Guarantee & Tr. Co.*, 193 N. Y. 37; *McDermott* v. *Lawyers Mortgage Co.*, 232 N. Y. 336, followed.)

*Weaver Hardware Company* v. *Solomovitz*, 200 App. Div. 853, modified.

(Argued January 22, 1923; decided March 23, 1923.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the fourth judicial department, entered April 29, 1922, unanimously affirming

a judgment entered upon a decision of the court on trial at Special Term in an action to foreclose a mechanic's lien.

*Arthur E. Sutherland* for George H. Stalker, appellant. The findings of fact are insufficient to support the conclusion of law that the agreement between the defendant Stalker and the defendant Solomovitz was corrupt, illegal and usurious. (*Brown* v. *Robinson,* 224 N. Y. 301; *Salvin* v. *Myles Realty Co.,* 227 N. Y. 51; *Harley* v. *Eagle Ins. Co.,* 222 N. Y. 178; *Hall* v. *Eagle Ins. Co.,* 151 App. Div. 815; 211 N. Y. 507; *Chatham Bank* v. *Betts,* 37 N. Y. 356; *Kitchel* v. *Schenck,* 29 N. Y. 515; *Berdsall* v. *Wheeler,* 62 App. Div. 625; 173 N. Y. 590; *Flower City Nat. Bank* v. *Miller,* 4 App. Div. 585; *Grannis* v. *Temple,* 84 Misc. Rep. 415; *Matthews* v. *Coe,* 70 N. Y. 239.) The fourth note for $5,000, given by Solomovitz to Stalker for goods sold and delivered, is free from any claim of invalidity on the ground of usury. (*Dry Dock Bank* v. *American Life Ins. Co.,* 3 N. Y. 344; *Bull* v. *Rice,* 5 N. Y. 315; *Meaker* v. *Fiero,* 145 N. Y. 165; *Orvis* v. *Curtiss,* 157 N. Y. 657; *Langdon* v. *Gray,* 52 How. Pr. 387.) Even if the notes given by Solomovitz to Stalker were void for usury in the hands of the original parties they are valid in the hands of the Merchants Bank, and the bank has the right to enforce the mortgage securing these notes, and the judgment in so far as it awards priority to the Merchants Bank should be affirmed. (*Schlesinger* v. *Gilhooly,* 189 N. Y. 1; *Schlesinger* v. *Lehmaier,* 191 N. Y. 69; *Schlesinger* v. *Kelly,* 114 App. Div. 546; *Gould* v. *Marsh,* 1 Hun, 566; *Nat. L. S. Bank of Chicago* v. *National Bank,* 203 U. S. 296; *Matter of Grocers Banking Co.,* 226 Fed. Rep. 900; *Runyan* v. *Merserau,* 11 Johns. 534; *Gould* v. *Ellery,* 39 Barb. 163; Jones on Mortgages [7th ed.], § 834; *Hubbard* v. *Briggs,* 31 N. Y. 517; *U. D. Sav. Inst.* v. *Wilmot,* 94 N. Y. 221; *Chapuis* v. *Mathot,* 91 Hun, 565; 155 N. Y. 641.) Judgment should be affirmed in so far as it held that the

arrangements between Solomovitz and Stalker did not constitute a building loan agreement. (*McDermott* v. *Lawyers' Mort. Co.*, 232 N. Y. 336; *Penn. Steel Co.* v. *Title G. & T. Co.*, 50 Misc. Rep. 51; 120 App. Div. 879; 193 N. Y. 37.)

*Nicholas J. Weldgen* for Lyell Avenue Lumber Company, appellant. The notes and mortgage were absolutely void and could not be made valid by discounting the notes. (*Claflin* v. *Boorum*, 122 N. Y. 385, 388; *Sabin* v. *Paine*, 223 N. Y. 401–404.) Section 114 of the Banking Law does not protect the defendant Merchants Bank from the defense of usury. (*Sabin* v. *Paine*, 223 N. Y. 401.) If the Banking Law affords protection to the Merchants Bank of Rochester from the defense of usury on the notes discounted by it, that protection extends only to the notes themselves and does not extend to the mortgage given to secure them. (*Gould* v. *Marsh*, 1 Hun, 566; *Carpenter* v. *Longan*, 16 Wall. 271; *Morford* v. *Davis*, 28 N. Y. 481; *Sabine* v. *Paine*, 223 N. Y. 401; *Johnson* v. *Carpenter*, 7 Minn. 176; *Hostetler* v. *Alexander*, 22 Minn. 559; *Oster* v. *Mickley*, 35 Minn. 245; *Scott* v. *Austin*, 36 Minn. 460; *Redin* v. *Branhan*, 43 Minn. 283; *Smith* v. *Parsons*, 55 Minn. 520, 528; *Watkins* v. *Goessler*, 65 Minn. 118.) The Stalker mortgage is void and unenforcible both because there was no intention to assign and because rights of innocent third parties have intervened. (*Langdon* v. *Buell*, 9 Wend. 80; *Shafer* v. *Reilly*, 50 N. Y. 61.) The defendant Lyell Avenue Lumber Company and the defendant mechanic's lienors were entitled to attack the Stalker notes and mortgage on the ground of usury. (*U. D. Sav. Inst.* v. *Wilmot*, 94 N. Y. 221; *Berdan* v. *Sedgewick*, 40 Barb. 359; 45 N. Y. 626; *Thompson* v. *Van Vechten*, 27 N. Y. 568; *Mason* v. *Lord*, 40 N. Y. 476, 486.) The notes and the mortgage had their inception when they were delivered to Stalker. (*Grannis* v. *Stevens*, 216 N. Y. 583; *Claflin* v. *Boorum*,

122 N. Y. 385; *Sabine* v. *Paine*, 223 N. Y. 401.) The $5,000 note retained by Stalker was a part of the usurious transaction and was properly held by the court to be void. (*Jackson* v. *Packard*, 6 Wend. 415; *Williams* v. *Fitzhugh*, 37 N. Y. 444; *Nat. Bank* v. *Lewis*, 75 N. Y. 516.)

*John Van Voorhis* and *James P. O'Connor* for Ruth M. Laube et al., appellants. The agreement entered into by Stalker with the owner as found in the findings of fact is a contract for a building loan within the scope of section 22 of the Lien Law, and any interest of the said Stalker, or of his assignee, the Merchants Bank of Rochester, in the real property is subject to the lien and claim of the mechanic's lienors. (*McDermott, Inc.,* v. *Lawyers Mortgage Co.*, 232 N. Y. 336; *Penn. Steel Co.* v. *Title Guar. & Trust Co.*, 193 N. Y. 37; *Packard* v. *Sugarman*, 31 Misc. Rep. 623.) The usury laws of the state have not been repealed by implication by the State and National Banking Acts so as to affect the standing of the Merchants Bank of Rochester in this action, and the three usurious notes discounted by the said bank for the defendant George H. Stalker are absolutely void for usury in the hands of the bank. (*Schlesinger* v. *Gilhooly*, 189 N. Y. 1; *Schlesinger* v. *Lehmaier*, 191 N. Y. 69.) If the combined effect of the Banking Law and the Negotiable Instruments Law affords protection to the Merchants Bank of Rochester from the defense of usury on the notes discounted by it, that protection extends only to the notes themselves and does not extend to the mortgage given to secure them. (*Elias* v. *Boeger*, 74 Misc. Rep. 547; Pomeroy's Eq. Juris. 2419, 2420.)

*A. M. Little* for American Clay and Cement Corporation et al., appellants.

*George J. Skivington* and *Francis S. Macomber* for respondent. The notes in the hands of the bank are not subject to the defense of usury. (*F. & M. Nat.*

*Bank* v. *Dearing,* 59 N. Y. 659; 91 U. S. 29; *Schlesinger* v. *Gilhooly,* 189 N. Y. 1; *Schlesinger* v. *Lehmaier,* 191 N. Y. 69; *People* v. *Young,* 207 N. Y. 522; *Slade* v. *Squier,* 133 App. Div. 666; *Public Bank of N. Y. City* v. *London,* 147 N. Y. Supp. 738; 165 App. Div. 911.) The mortgage being collateral to the notes, passed to the Merchants Bank of Rochester when it discounted the notes. (Thomas on Mortgages [3d ed.], 266; Jones on Coll. Securities [3d ed.], 171; *Langon* v. *Buell,* 9 Wend. 80; *Goettlicher* v. *Wille,* 76 Misc. Rep. 361; *Holmes* v. *French,* 70 Me. 341; *Segwich* v. *Johnson,* 107 Ill. 385.) The bank holds the mortgage, as it holds the notes, free from the defense of usury. (*Nat. L. S. Bank* v. *First Nat. Bank,* 203 U. S. 296; *Slade* v. *Squier,* 133 App. Div. 666; *Public Bank* v. *London,* 165 App. Div. 911; *Empire Trust Co.* v. *Coleman,* 85 Misc. Rep. 312.)

HISCOCK, Ch. J.     This action was brought to foreclose a mechanic's lien. There were joined as defendants various mortgagees and mechanics' lienors and out of the litigation there have arisen a series of questions which, taken together, affect the validity or status of the claims respectively of practically all of the parties. We shall state the fundamental facts which outline the general situation out of which these questions have arisen and then in the consideration of such of the various controversies as seem to require discussion state more in detail the facts which pertain to that particular controversy.

The defendant Solomovitz became the owner of a piece of land upon which he desired to construct an apartment house. Having more land and ambition than money he made an arrangement with the defendant Stalker for the purpose of securing means with which to erect his building. Stalker apparently was a dealer in money as well as in building materials and he made an arrangement to advance the sum of about $16,000 in money and also building materials apparently of a value

of $4,000 for which Solomovitz was to and did execute and deliver four promissory notes each for $5,000, indorsed by his wife and secured by a mortgage on the premises in question. There was also an agreement between the two for the payment of interest on these notes in excess of the legal rate and which we shall assume for the purposes of this discussion made three of the four notes usurious and invalid in their inception. The fourth note, given for materials, we think stands on a different basis and will be discussed by itself.

As Stalker received from time to time the three original notes given for moneys to be advanced by him he took them severally to the defendant Merchants Bank of Rochester which discounted them advancing the full amount thereof and without knowledge of usury or any other defect in their inception. These notes were from time to time during a period of about a year renewed in the hands of the bank by the execution and delivery by Solomovitz to Stalker of new notes for the purpose of renewing and taking up the old ones and in that manner the bank has become the present owner of the two notes involved in this action, two of the $5,000 notes having been consolidated into one for $10,000. The mortgage which was given to secure the originals of these notes and all renewals thereof has been formally assigned to the bank.

The defendant Lyell Avenue Lumber Company sold and delivered to Solomovitz materials which on the 12th day of August, 1914, aggregated in amount and value the sum of $7,575.17 and on that day Solomovitz and his wife executed to said company a mortgage in the sum of $9,000 to secure any indebtedness due or to become due from Solomovitz to it. Said company, however, only claims under said mortgage the indebtedness above stated and no dispute seems to be made by anybody that it is entitled to enforce said mortgage to that extent subject to the prior lien, if any, of the mortgage given to

Stalker to secure his notes and subject to still another mortgage which is undisputed and prior to both of these latter liens.

The defendant Levin and his assignee American Clay and Cement Corporation are claimants under a mechanic's lien filed for materials supplied by the former and their claim for a lien has been defeated on the ground that the notice thereof did not comply with the statute.

The other defendants aside from the bank supplied materials or performed services for Solomovitz in the erection of his building and . for the same they have respectively filed liens which have been held to be good . and valid but subordinate to the mortgages which have been mentioned.

The claim of the plaintiff was defeated because of irregularity and illegality and no appeal has been taken from the judgment in that respect and, therefore, his original claim to relief may be dismissed and disregarded.

We shall take up first the claims made by all the subsequent lienors that the notes held by the bank and by Stalker respectively are void for usury and that, therefore, the mortgage securing them falls, and then the one made by the mechanics' lienors that the arrangement between Solomovitz and Stalker was a building loan agreement and that, therefore, under the provisions of section 22 of the Lien Law (Cons. Laws, ch. 33), it should have been reduced to writing and recorded in order to make it valid as against such lienors.

In discussing the question whether the notes now held by the bank are void, counsel have assumed that their general status is the same as that of the original notes given by Solomovitz to Stalker and that the answer to the question whether they, void in their inception, continued to be so in the hands of the bank depends upon the effect to be given to section 114 of the Banking Law (Cons. Laws, ch. 2). In the view which I take of the facts we would not reach the question of the effect of this

statute but are led to the conclusion that entirely independent of it the notes held by the bank are valid and enforcible.

It has explicitly been found that the three original notes which we have assumed to be infected with usury were discounted by the bank for full value and without notice of any defect; that thereafter and from time to time during a period of a year Solomovitz delivered to Stalker new notes with which to take up said original notes and the renewals thereof until finally there were given the notes now before us. It is fairly to be inferred as incidental to these express findings and in accordance with usual custom of which we may take judicial notice that when Solomovitz delivered these new notes to Stalker for the purpose of taking up preceding ones he must have known that the notes which were thus being taken up or renewed had passed into the possession of someone other than Stalker, because on delivery of the new notes Stalker necessarily could not surrender the old ones as would be the ordinary practice if he still continued to hold them. In addition to this the notes which were taken up by Solomovitz from time to time during the course of a year when finally delivered to him presumptively bore evidence through those marks which are habitually put by a bank upon paper which it discounts that they had been in the hands of some one else than Stalker. Therefore when Solomovitz delivered new notes to Stalker for the purpose of taking up the preceding ones including the original notes, he is to be charged with knowledge that the new notes were being made for the purpose of taking up old notes, which had passed into the possession of some one else, and he authorized such use and made Stalker his agent for that purpose. The original notes which the bank had discounted in good faith for full value and without notice of any defect constituted a good consideration for the new notes which were made and executed by Solomovitz for the purpose

of taking them up and when these new notes passed into the hands of the bank they were purged of the usury which infected the original notes and became and their renewals are valid and enforcible obligations. (*Kent* v. *Walton*, 7 Wend. 256; *Aldrich* v. *Reynolds*, 1 Barb. Ch. 43; *Jackson* v. *Henry*, 10 Johns. 185; *Powell* v. *Waters*, 8 Cow. 669, 691; *Kilner* v. *O'Brien*, 14 Hun, 414; *Call* v. *Palmer*, 116 U. S. 98, 101; *Houghton* v. *Payne*, 26 Conn. 396; *Taylor* v. *Morris*, 22 N. J. Eq. 606, 609; *Bearce* v. *Barstow*, 9 Mass. 45, 48.)

If I am wrong in the foregoing views it is still the opinion of a majority of the court that the notes discounted and held by the Merchants Bank of Rochester and their renewals were purged of usury and validated under the provisions of section 114 of the Banking Law. (*Schlesinger* v. *Gilhooly*, 189 N. Y. 1; *Schlesinger* v. *Lehmaier*, 191 N. Y. 69.)

So far as concerns the fourth note which was never discounted but has at all times been held by Stalker, we are utterly unable to see how that is infected with any usury. The findings are that Solomovitz executed to Stalker four notes of $5,000 each under an arrangement whereby the latter was to loan to the former the sum of about $16,000 in money and to furnish him with building materials and that in consideration thereof Solomovitz was to pay an unlawful rate of interest on the notes; that thereafter Solomovitz did execute three notes of $5,000 each which were discounted and the proceeds thereof paid out for the benefit of the maker; that Stalker furnished building materials of the value of $4,764.74; " that the fourth and last of said $5,000 notes (the one now under discussion) above mentioned was not discounted but was held by the defendant George H. Stalker upon the arrangement between the said Stalker and the said Solomovitz as payment for said sash, doors, blinds, interior trim and window screens  *  *  *;  that no part of the same has been paid and no part of the purchase

price of said sash, doors, blinds, interior trim and window screens has been paid except by said note."

The laws against usury pertain to the loan and for-bearance of money and not to the purchase price of building materials. It may be assumed without detriment to our present views that if Stalker loaning $15,000 and selling $5,000 worth of building materials had taken a single note for $20,000 under an usurious agreement applicable to the loan of the money, said note would have been invalid and could not be enforced to the extent of the selling price of the materials so sold, but in that case the original obligation to pay the purchase price of the goods would be revived. (*Gerwig* v. *Sitterly*, 56 N. Y. 214; *Brown* v. *Dewey*, 1 Sandf. Ch. 56.)

That, however, is not this case. Under the findings which have been cited the price of the goods which Stalker sold was entirely segregated from the loans of money which he made and the note under discussion was given solely and simply for the former price. There is no way in which usury could be injected into the note thus given so as to make it void. (*Siewert* v. *Hamel*, 91 N. Y. 199; *Schermerhorn* v. *Talman*, 14 N. Y. 93; *Leavitt* v. *DeLauny*, 4 N. Y. 363; *Orvis* v. *Curtiss*, 157 N. Y. 657.) We see no reason, therefore, why this note is not a valid obligation to the extent of the purchase price of the goods for which it was given. As to the balance there is a failure of consideration.

It is argued that even though the notes held by the bank are valid obligations, the mortgage given to secure this series of notes is to be considered apart from the notes and that it is infected with the usury of the original transaction between Solomovitz and Stalker and cannot now be enforced by the bank as security for the notes held by it.

We regard it as too long and too well settled in this state to permit it now to be questioned that a mortgage given to secure notes is an incident to the latter and stands

or falls with them. (*Jackson* v. *Willard*, 4 Johns. 41; *Jackson* v. *Blodget*, 5 Cow. 202; *Gould* v. *Ellery*, 39 Barb. 163; *Gould* v. *Marsh*, 1 Hun, 566; *Carpenter* v. *Longan*, 16 Wall. [U. S.] 271.) The mortgage in question was given to secure the original notes and all renewals thereof. While we have assumed that under the findings the original notes in the hands of Stalker were usurious, as we have pointed out the notes in the hands of the bank were purged of usury and became valid obligations as against which neither the maker of the notes nor his subsequent grantees could urge the defense of usury. (*Union Dime Sav. Institution* v. *Wilmot*, 94 N. Y. 221, 228.) These subsequent notes thus taken by the bank come precisely within the terms of the mortgage which was a continuing security for the original notes and all renewals thereof and the elimination of the usury occurred before any of the liens held by defendants accrued. Under these circumstances we have no doubt that the bank is entitled to the benefit of the mortgage which was given to secure such notes as it now holds.

So far as concerns the note given to and held by Stalker for the purchase price of materials sold by him it follows as a matter of course that that note not having been tainted with usury is entitled to the security and benefit of the mortgage. It is true that this mortgage was not formally assigned to the bank until after the claims of the various defendants had ripened into liens but that assignment simply formally carried out the rights which the bank had secured without any formal assignment and under which the notes discounted by it drew after them for its benefit any securities therefor.

Finally it is argued by the mechanics' lienors that the arrangement between Solomovitz and Stalker for a loan was a building loan agreement under section 22 of the Lien Law and that under the provisions of that section it was necessary to reduce this agreement to writing and file the same including the mortgage in the county clerk's

office in order to preserve a lien for the loan superior to the mechanics' liens of materialmen. The trial court found in what was designated as a finding of fact that it was not such a building loan agreement and it is argued that this finding unanimously affirmed is conclusive. We are inclined to take the view, however, that all of the details of the arrangement between the parties having been found they are controlling as against any general conclusion whether of fact or law and that we are to determine from them as matter of law whether the arrangement was a building loan agreement and within the provisions and penalties of section 22.

The findings are to the effect that Solomovitz proposing to construct a house and not having sufficient moneys with which to do it " applied to the defendant  *  *  * Stalker for a loan with which to build and complete such apartment house; " that Solomovitz executed four notes for $5,000 each secured by a mortgage on the premises in question and that these notes and this mortgage were delivered to Stalker pursuant to an agreement " wherein and whereby said defendant  *  *  * promised and agreed to loan to the defendant  *  *  * Solomovitz on the security of said notes and mortgage the sum of about $16,000 in money which sum was to be advanced in installments from time to time as the sum was needed in the construction or erection of a building or apartment house " (we leave out of consideration any agreement for the sale of materials because manifestly those do not come within the statutory provisions under discussion); that thereafter three of those notes were discounted at the bank and the proceeds placed to the credit of Stalker and by him from time to time paid out " upon the order and request of said  *  *  * Solomovitz and as the work upon said building progressed sufficiently to make it safe and proper to make such payments."

Thus we have the simple transaction of a mortgage given to secure a loan for the purpose of erecting a build-

ing and to be advanced in installments from time to time as might be rendered safe by the condition of the building. There is no agreement upon the part of the borrower and mortgagor to erect any building and no expression of any details such as would be appropriate to an agreement whereby one party agreed to erect and the other party agreed to loan money for the purpose of such erection. We shall assume without deciding it that the *bona fide* holder for value of the notes given under such circumstances and arrangement as this would be subjected to the penalties of section 22 if this was as between the original parties a building loan agreement and we pass to the consideration of that specific question.

All that we have here is a loan of money secured by mortgage for the purpose of putting up a building and to be advanced from time to time in installments. From time immemorial that form of loan has been common. We may take judicial notice of the fact that it has been a common form of loan with savings banks under which millions of dollars have been loaned for the purpose of enabling borrowers to erect buildings. Protection against such loans to materialmen was afforded by the recording act and by a statutory provision to which attention will later be called.

Under such circumstances unless it has clearly expressed the intent so to do we ought not to assume that the legislature intended to interfere with loans of this kind or impair their security or require the mortgagee in such a loan in addition to the requirements for recording, to reduce to writing an agreement to make the loan and then file it in the office of the county clerk where already the mortgage was placed upon record. We do not believe that either the words or conceivable purpose of section 22 calls upon us to give to it any such construction. It doubtless would have been beneficial if the legislature had defined what it meant by a " building loan agreement " in this section instead of leaving the solution

of the question of its meaning somewhat to conjecture. But without such definition we feel quite clear that the term did not cover the present transaction. The portion of this section now especially under consideration originally appeared in section 21 of chapter 418 of the Laws of 1897 and read: "A contract for the sale of land with a building loan and any modification thereof, must be in writing," etc. By chapter 78 of the Laws of 1900 this provision was amended so as to read as now found: "A contract for a building loan, either with or without the sale of land, and any modification thereof, must be in writing," etc. We are inclined to think that in making these enactments the legislature had in mind a mutual agreement whereby one party agreed to erect buildings and the other party agreed to make loans for the purpose of such erection. Such has been the agreement in cases which we have had occasion to cite or consider. (*Packard* v. *Sugarman*, 31 Misc. Rep. 623; *Penn. Steel Company* v. *Title Guarantee & Tr. Co.*, 193 N. Y. 37; *McDermott* v. *Lawyers Mortgage Co.*, 232 N. Y. 336.)

But even if we are wrong in this view it seems to us that the legislature must have had in mind an agreement other and different than a simple mortgage to secure a loan to be advanced in installments and where all adequate notice would be given by the record of the mortgage. An agreement for a building loan, that is, to make a loan for building purposes, might be in a form which would not come within the recording acts and which might be a source of danger to subsequent materialmen unless placed on file as required by this section. For instance such an agreement might provide for large loans which might result in unexpected mortgages or judgments to secure large sums already advanced and which would thus be to the prejudice of materialmen or laborers whose material or work had already gone into the building and which would then become subject to the lien of such mortgage or judgment. In our opinion the section in question

was intended to guard against such a situation and danger as that and not as against an ordinary mortgage to secure future advances and which by recording would give ample notice to materialmen of their dangers.

We are confirmed in this opinion by reference to another provision of the Lien Law. As we have seen the original provision providing for building loan agreements was adopted in 1897 and then was amended in 1916. Section 13 of the Lien Law as adopted in 1909 provided that "A lien for materials furnished or labor performed in the improvement of real property shall have priority over a conveyance, judgment or other claim against such property not recorded, docketed or filed at the time of filing the notice of such lien; *over advances made upon any mortgage* or other encumbrance thereon after such filing." By chapter 507 of the Laws of 1916, by which was amended the provision relating to filing building loan agreements, there was also amended the section just quoted providing that liens for materials, etc., should have priority over advances made upon mortgage after the filing of such liens. By this action of the legislature in thus recognizing and dealing with mortgages to secure future advances at the same time that it adopted the provision with reference to filing building loan agreements, we think that it was made evident that the legislature did not intend to interfere with mortgages of the character stated or apply to them the requirement for filing, but intended by such latter provision to deal with a different kind of agreements.

We, therefore, conclude that to the extent of the purchase price of the materials delivered by Stalker to Solomovitz as in the findings set forth, being $4,023.58 after certain credits with interest from the date the same were furnished and which was prior to August 15, 1914, the note for $5,000 executed by the defendant Solomovitz to Stalker and held by the latter is a valid and enforcible obligation and secured by the mortgage referred to in the

findings; that the notes held by the Merchants Bank of Rochester and referred to in the findings are, with interest thereon, valid and enforcible claims and secured by the mortgage referred to in said findings; that the proceeds derived from the sale of the mortgaged premises after payment of taxes, water rates, referee's fees and costs as in the judgment provided should be next applied to the payment in full or *pro rata* as the case may be of the amounts due to the Merchants Bank of Rochester and to the defendant Stalker respectively as hereinbefore set forth and thereafter to the payment of other claims as in said judgment provided; that the plaintiff Weaver Hardware Company and the defendant American Clay and Cement Corporation should have relief as in said judgment provided.

The judgment appealed from should be modified accordingly and as so modified affirmed, with costs to the Merchants Bank of Rochester against the appellant defendants, other than defendant Stalker, and with costs to the defendant Stalker in all courts against said defendant appellants.

HOGAN, MCLAUGHLIN, CRANE and ANDREWS, JJ., concur; CARDOZO, J., dissents; POUND, J., not voting.

Judgment accordingly.