SYRACUSE CAPITAL CORPORATION, Plaintiff, *v.* PATTISON CON-STRUCTION CORPORATION, JAMES J. DALTON and Others, Defendants.

Supreme Court, Onondaga County, April 12, 1929.

*Hancock, Dorr, Kingsley & Shove,* for the plaintiff.

*Mark E. Conan,* for the defendant James J. Dalton.

BROWN, J. In this action, brought to foreclose six mortgages, motion is made by plaintiff to dismiss the affirmative defense set up in the answer of defendant Dalton, whereby, with respect to the mortgage set up in the fifth cause of action of the complaint; said defendant seeks to establish the priority of two mechanics' liens.

With the exception of the claim of priority as to the said two mechanics' liens, all the allegations of the complaint stand admitted by the answer. From the complaint it appears that on April 25, 1928, defendant Pattison Construction Corporation, executed and delivered its bond to the plaintiff for the purpose of securing payment to the plaintiff of such sum or sums of money as the plaintiff might at its option advance to said Pattison Construction Corporation, up to but not exceeding the sum of $100,000, whereby it bound itself in the penal sum of $200,000 to pay to the plaintiff five months from the date thereof, such sums of money up to $100,000 as the plaintiff should have advanced to said defendant Pattison Construction Corporation. As collateral security, said Pattison Construction Corporation executed and delivered a mortgage upon the premises described in the fifth cause of action in the complaint. The said bond and mortgage were recorded in the Onondaga county clerk's office on the 25th day of April, 1928. Prior to September 25, 1928, the plaintiff advanced to the defendant Pattison Construction Corporation the sum of $93,000 secured by said bond and mortgage, which principal sum and interest thereon defendant Pattison Construction Corporation failed to pay when due, and the plaintiff has declared the whole amount due.

The answer sets up that defendant Dalton performed two jobs for defendant Pattison Construction Corporation in the improvement of the premises described in the mortgage above mentioned. On one job, commencing June 1, 1928, and ending November 27, 1928, a notice of mechanic's lien in the amount of $5,102.48 was filed on November 7, 1928. On the second job, commencing September 27, 1928, and ending November 9, 1928, a notice of mechanic's lien in the amount of $1,672 was filed on November 9, 1928. No part of the sums of money for which the notices of the mechanics' liens were filed has been paid.

The defendant's answer claims that said mechanics' liens are prior to the mortgage hereinbefore mentioned, by reason of the fact that on the 25th day of April, 1928, the plaintiff and defendant Pattison Construction Corporation entered into a building loan contract, under and pursuant to which the bond and mortgage above mentioned were executed and delivered, which building loan contract was not acknowledged by the plaintiff as required by section 22 of the Lien Law (as amd. by Laws of 1916, chap. 507). The instrument which defendant thus contends is a building loan contract, is attached to the answer and marked " Schedule C," and will hereafter be spoken of as such. " Schedule C," entitled " Building Loan Agreement," was signed and acknowledged only by defendant Pattison Construction Corporation and was filed in the county clerk's

office on April 25, 1928. In the first " Whereas " clause there is recited the fact that defendant Pattison Construction Corporation had executed and delivered its bond and mortgage in the amount of $100,000 to the plaintiff, and the second " Whereas " clause states that " first party [defendant Pattison Construction Corporation] is constructing nineteen dwellings upon said premises to cost at least $160,000, and desires to obtain from the second party [the plaintiff herein] advances from the moneys secured by said bond and mortgage during the progress of said construction." In the body of " Schedule C " defendant Pattison Construction Corporation agrees that it will complete the said dwellings with proper materials and with speed consistent with good workmanship, and the plaintiff agrees to advance to Pattison Construction Corporation for the construction of said dwellings $9,000 upon the approval of papers and title by the attorneys for the plaintiff, " and the balance at the discretion of the " plaintiff.

If the transaction of April 25, 1928, constituted a building loan contract, which was not properly filed as required by section 22 of the Lien Law, then pursuant to the provisions of said statute, the two mechanics' liens would be superior to the mortgage set forth in the fifth cause of action of complaint.

What is the meaning of " a contract for a building loan " as used in section 22 of the Lien Law? The statute itself gives us no assistance.* The phrase is used without description or definition. This section has been considered in several cases by the Court of Appeals. (See *Weaver Hardware Co.* v. *Solomovitz*, 235 N. Y. 321; *McDermott* v. *Lawyers Mortgage Co.*, 232 id. 336; *Pennsylvania Steel Co.* v. *Title Guaranty & Trust Company*, 193 id. 37.)

Under " Schedule C," the balance of the moneys over and above $9,000 was to be advanced " at the discretion of the " plaintiff, and the instrument was not signed or acknowledged by the plaintiff. It would seem, therefore, not to be " a mutual agreement " such as the Court of Appeals was inclined to think necessary to constitute a building loan contract within the meaning of section 22 of the Lien Law. (See opinion of HISCOCK, Ch. J., in the case of *Weaver Hardware Co.* v. *Solomovitz, supra,* 335.)

Judge POUND, writing for the Court of Appeals in the case of *McDermott* v. *Lawyers Mortgage Co. (supra)* said (at p. 343): " The first agreement had all the essentials of a complete contract for a building loan. By its terms the Montague Construction Company agrees to erect the buildings as described therein on the premises in question and the Lawyers Mortgage Company agrees to make the

---

*But see Lien Law, § 2, as amd. by Laws of 1929, chap. 515.—[REP.

building loans; the buildings are described and the times and amounts of advances as the buildings progress are indicated." Nowhere in "Schedule C" are the buildings described, nor is there indicated the times and amount of advances as the buildings progressed.

Not only does "Schedule C" fail to set forth a "mutual agreement" and lack the essential details of a building loan contract within the meaning of section 22 of the Lien Law, but, in my opinion, the transaction between the plaintiff and defendant Pattison Construction Corporation involves only a mortgage to secure future advances. And if such is the case, the transaction does not fall within section 22 of the Lien Law. (*Weaver Hardware Co.* v. *Solomovitz, supra.*)

The bond and mortgage were executed and filed April 25, 1928. They did not arise out of or spring from "Schedule C." In fact, "Schedule C" recites that the bond and mortgage had already been executed. If "Schedule C" had had no existence, the lien of the mortgage would have been superior, for the reason that all advances under the mortgage were made prior to the filing of either of the mechanics' liens. Is the priority of the mortgage to fail merely because of "Schedule C?" I think not. "Schedule C" is merely an instrument additional and supplementary to the bond and mortgage. The Court of Appeals in the case of *Weaver Hardware Co.* v. *Solomovitz* (*supra*) held that the oral agreement therein entered into, and very similar to "Schedule C," did not convert a mortgage to cover future advances into a building loan agreement. Is it to be held that the nature of the transaction is to be changed to a building loan agreement by the fact that "Schedule C" was in writing, whereas it would be construed a simple mortgage to secure future advances, if the agreement as set forth in "Schedule C" had been verbal? It would be a strange interpretation of the law indeed which would thus penalize the plaintiff for having reduced the agreement to writing. The supplementary agreement "Schedule C" did not change the nature of the transaction, and my opinion upon this point would be the same whether such agreement was verbal or in writing, filed or not filed.

The Legislature provided in section 22 of the Lien Law the consequences of the failure to file a contract for a building loan within ten days after its execution. The reason for the requirement of such filing is obvious. Were such not the case, a materialman while protected from an unrecorded conveyance or judgment under section 13 of the Lien Law (as amd. by Laws of 1916, chap. 507), would have no protection against a mortgage or judgment filed pursuant

to a building loan contract not coming within the recording acts. This point has been well stated in the case of *Weaver Hardware Co.* v. *Solomovitz* (*supra*). HISCOCK, Ch. J. (at p. 335), wrote as follows: " An agreement for a building loan, that is, to make a loan for building purposes, might be in a form which would not come within the recording acts and which might be a source of danger to subsequent materialmen unless placed on file as required by this section. For instance such an agreement might provide for large loans which might result in unexpected mortgages or judgments to secure large sums already advanced and which would thus be to the prejudice of materialmen or laborers whose material or work had already gone into the building and which would then become subject to the lien of such mortgage or judgment. In our opinion the section in question was intended to guard against such a situation and danger as that and not as against an ordinary mortgage to secure future advances and which by recording would give ample notice to materialmen of their dangers." If, in the case at bar, we keep in mind the reasoning of Chief Judge HISCOCK, it becomes evident that section 22 of the Lien Law has no application to the present case. Here the mortgage was filed. Defendant Dalton had due notice thereof. He performed the labor and furnished the materials with full knowledge that with respect to any advances made on the mortgage prior to filing of notice of mechanics' lien, the mortgage would be superior. There was no danger of " unexpected mortgages or judgments." The fact that " Schedule C " was labeled " Building Loan Agreement " is in no sense controlling. The giving of a name to an instrument, by the parties, does not determine the nature of the writing.

It might be remarked in passing that if, as contended by defendant Dalton, " Schedule C " were a building loan contract, when such instrument did not contain a testimonium clause calling for the signing by the plaintiff, then it is obvious that not being signed by plaintiff, it could not be acknowledged, and, under such contention, it would logically follow that it was properly filed. But I do not base my decision upon such point. I hold the transaction not to be a building loan contract and, therefore, the question of whether " Schedule C " was duly and properly filed is of no importance.

In so far as answer of defendant Dalton seeks to assert the priority of mechanics' liens over mortgages, motion of plaintiff is granted. Order to be entered accordingly.