Federal Natl. Mtge. Assn. v Tortora (2020 NY Slip Op 05410)





Federal Natl. Mtge. Assn. v Tortora


2020 NY Slip Op 05410


Decided on October 2, 2020


Appellate Division, Fourth Department


Curran, J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on October 2, 2020
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Fourth Judicial Department

PRESENT: CENTRA, J.P., CARNI, LINDLEY, CURRAN, AND WINSLOW, JJ.


1299/19 CA 18-02343

[*1]FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA, PLAINTIFF-APPELLANT,
v
CLAUDE TORTORA, ALSO KNOWN AS CLAUDE TOTORA, ALSO KNOWN AS CLAUDE T. TORTORA, DEFENDANT-RESPONDENT, ET AL., DEFENDANTS. (ACTION NO. 1.)
CLAUDE TORTORA, INDIVIDUALLY, AND AS EXECUTOR OF THE ESTATE OF JACQUELINE SQUITIERI, DECEASED, PLAINTIFF-RESPONDENT,
v
FEDERAL NATIONAL MORTGAGE ASSOCIATION ("FANNIE MAE"), A CORPORATION ORGANIZED AND EXISTING UNDER THE LAWS OF THE UNITED STATES OF AMERICA, DEFENDANT-APPELLANT. (ACTION NO. 2.) (APPEAL NO. 1.) 






HOGAN LOVELLS US LLP, NEW YORK CITY (CHAVA BRANDRISS OF COUNSEL), FOR PLAINTIFF-APPELLANT AND DEFENDANT-APPELLANT.
WEBSTER & DUBS, P.C., BUFFALO (DANIEL WEBSTER OF COUNSEL), FOR DEFENDANT-RESPONDENT AND PLAINTIFF-RESPONDENT. 


Curran
 Appeal from an amended order of the Supreme Court, Erie County (Frank A. Sedita, III, J.), entered December 13, 2018. The amended order, inter alia, granted summary judgment in action No. 1 to defendant Claude Tortora, also known as Claude Totora, also known as Claude T. Tortora, and determined that the subject mortgage is unenforceable. 
It is hereby ORDERED that the amended order so appealed from is unanimously affirmed without costs.
Opinion by Curran, J.: The main issue on appeal in these consolidated actions is whether in action No. 1 the applicable statute of limitations has expired, precluding Federal National Mortgage Association, the plaintiff in action No. 1 and the defendant in action No. 2 (Fannie Mae), from foreclosing a mortgage given by decedent Jacqueline Squitieri, mother of the plaintiff in action No. 2, who is also a defendant in action No. 1 (Tortora). In particular, this appeal presents a novel question for this Court: whether a reinstatement provision in the subject mortgage that gives the mortgagor the option, under some circumstances, to de-accelerate the full mortgage debt prevented the mortgagee from validly accelerating the full mortgage debt and thereby prevented accrual of the foreclosure action for statute of limitations purposes. We answer that question in the negative.
I
The subject property, a residence located in Amherst, New York, was purchased in 2007 by Squitieri by means of a loan secured by a 30-year mortgage. The mortgage is a uniform instrument issued by Fannie Mae, among others, for use in New York State and contains several provisions that are relevant on appeal. Section 22 (acceleration provision) permits the lender to require immediate payment of the loan in full upon the borrower's default, provided certain conditions are met. Section 19 (reinstatement provision) grants a borrower in default the right to effectively de-accelerate the maturity of the mortgage debt by paying in full the past due amount, thereby returning the loan to its pre-default status. Additionally, section 3 (a) requires the borrower to pay certain amounts necessary for taxes and insurance, and sections 4 and 9 require the borrower to pay certain liens on the property and to reimburse the lender for amounts spent to protect the lender's rights in the property should the borrower fail to comply with the mortgage (collectively, authorized advances). In this case, authorized advances were paid by the lender's loan servicers on behalf of the borrower.
Squitieri defaulted on the loan in October 2008. In April 2009, Fannie Mae's predecessor in interest commenced a foreclosure action (first foreclosure action), stating in the complaint that it "elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal" on the mortgage debt. In July 2012, Supreme Court dismissed the first foreclosure action, without prejudice, based on the predecessor in interest's failure to supply a reasonable explanation for its inactivity in prosecuting the action.
In April 2013, the predecessor in interest commenced another foreclosure action (second foreclosure action) against, among others, Squitieri and Tortora, the latter of whom was initially named as a John Doe occupant of the property, based again on the 2008 default. Following assignment of the mortgage to it in 2014, Fannie Mae was substituted as plaintiff in the second foreclosure action and obtained a default judgment against Tortora and Squitieri, among others. Fannie Mae subsequently moved for a judgment of foreclosure and sale. In March 2015, however, the court denied that motion and instead dismissed the complaint with prejudice based on Fannie Mae's repeated failure to appear in support of its motion.
In August 2016, Squitieri commenced action No. 2—an action to quiet title to the subject property—seeking, inter alia, a determination that the mortgage was void and should be cancelled. Squitieri asserted that the full amount of the mortgage debt had been accelerated in 2009 and could no longer be enforced due to the expiration of the six-year statute of limitations. In its answer, Fannie Mae asserted, inter alia, a counterclaim to recover the amount of authorized advances paid by the loan servicer on behalf of Squitieri plus interest on those advances. Squitieri died in April 2017. She had previously transferred the subject property to Tortora by quitclaim deed dated May 2015, which was filed with the county clerk's office following her death.
In February 2018, Fannie Mae commenced action No. 1, a foreclosure action predicated on a default dating back to March 2012, seeking the principal amount of the mortgage debt, with interest. In his answer, Tortora alleged, as his only affirmative defense, that action No. 1 was barred by the statute of limitations because the debt had been accelerated in 2009 and more than six years had elapsed since then. Tortora thereafter moved for, inter alia, consolidation of the actions, substitution as plaintiff in action No. 2, summary judgment on the complaint in action No. 2, and summary judgment dismissing the complaint against him in action No. 1 as time-barred. Fannie Mae cross-moved, inter alia, to strike the statute of limitations defense in action No. 1 and for summary judgment dismissing the complaint in action No. 2 or, alternatively, summary judgment on its counterclaim in action No. 2.
Fannie Mae appeals from an amended order that, inter alia, denied the cross motion and granted that part of the motion seeking dismissal of the complaint in action No. 1 against Tortora as time-barred. We affirm.
IIA
The court did not err in granting that part of the motion seeking summary judgment [*2]dismissing the complaint against Tortora in action No. 1, insofar as Fannie Mae sought to recover the principal amount of the mortgage debt, as barred by the applicable six-year statute of limitations (see CPLR 213 [4]). The statute of limitations in an action to foreclose on a mortgage "begins to run once the debt has been accelerated by a demand" (Business Loan Ctr., Inc. v Wagner, 31 AD3d 1122, 1123 [4th Dept 2006]). "Acceleration occurs, inter alia, by the commencement of a foreclosure action" (Deutsche Bank Natl. Trust Co. v Adrian, 157 AD3d 934, 935 [2d Dept 2018]; see U.S. Bank N.A. v Balderston, 163 AD3d 1482, 1483-1484 [4th Dept 2018]; Fannie Mae v 133 Mgt., LLC, 126 AD3d 670, 670 [2d Dept 2015]). Moreover, "even if a mortgage is payable in installments, once a mortgage debt is accelerated, the entire amount is due and the [s]tatute of [l]imitations begins to run on the entire debt" (EMC Mtge. Corp. v Patella, 279 AD2d 604, 605 [2d Dept 2001] [emphasis added]; see Wilmington Sav. Fund Socy., FSB v Gustafson, 160 AD3d 1409, 1410 [4th Dept 2018]).
Here, we conclude that Tortora met his initial burden on the motion of establishing, "prima facie[,] that the time in which to sue ha[d] expired" (Chaplin v Tompkins, 173 AD3d 1661, 1662 [4th Dept 2019] [internal quotation marks omitted]; see Larkin v Rochester Hous. Auth., 81 AD3d 1354, 1355 [4th Dept 2011]). He did so by submitting evidence establishing that the full amount of the mortgage debt was accelerated in April 2009, when Fannie Mae's predecessor in interest commenced the first foreclosure action (see U.S. Bank N.A., 163 AD3d at 1483-1484; Wilmington Sav. Fund Socy., FSB, 160 AD3d at 1410; EMC Mtge. Corp., 279 AD2d at 605). Indeed, the predecessor in interest specifically stated in its complaint in that action that it "elected and hereby elects to declare immediately due and payable the entire unpaid balance of principal" on the mortgage debt (emphasis added). Because Fannie Mae did not commence action No. 1 until 2018, more than six years after the debt was accelerated, Tortora established that the statute of limitations had expired, requiring dismissal of that action (see CPLR 213 [4]; Larkin, 81 AD3d at 1355).
B
In opposition, Fannie Mae did not raise an issue of fact whether the full mortgage debt was accelerated in 2009 (see North Shore Invs. Realty Group, LLC v Traina, 170 AD3d 737, 738 [2d Dept 2019]; see generally Zuckerman v City of New York, 49 NY2d 557, 562 [1980]). Fannie Mae's central contention is that the mortgage debt could not have been accelerated in 2009; rather, it could only be accelerated once there was a final judgment of foreclosure inasmuch as the reinstatement provision of the mortgage precludes earlier acceleration of the full debt by granting the borrower the right to restore the loan to its pre-default status until the time of final judgment.
As Fannie Mae notes, however, the Second Department recently rejected that argument in Bank of N.Y. Mellon v Dieudonne (171 AD3d 34, 39-40 [2d Dept 2019], lv denied 34 NY3d 910 [2020] [hereafter, Dieudonne]), a case involving a mortgage identical to the one at issue here. Inasmuch as we agree with the Second Department's conclusion that the presence of a reinstatement provision does not, by itself, automatically preclude a lender from accelerating the full mortgage debt (see id. at 36), we reject Fannie Mae's contention that we should decline to follow that case.
Importantly, we conclude that the mortgage's reinstatement provision does not in any way affect or impede acceleration of the full mortgage debt. The reinstatement provision is not mentioned anywhere in the text of the mortgage's acceleration provision, which governs when Fannie Mae could exercise its option to accelerate the full debt (see id. at 36, 39-40). Further, the language of the reinstatement provision "indicates that [Fannie Mae's] right to accelerate the entire debt may be exercised before the [borrower's] rights under the reinstatement provision . . . are exercised or extinguished" (id. at 40). Thus, in effect, the reinstatement provision merely "gives the borrower the contractual option to de-accelerate the mortgage when certain conditions are met" (id. at 39 [emphasis added])—which presupposes that an acceleration has already occurred.
Inasmuch as the reinstatement provision did not automatically prevent acceleration of the debt before entry of a final judgment, we by necessity also reject Fannie Mae's argument that acceleration of a debt secured by a mortgage containing a reinstatement provision could not occur until entry of a final judgment. Accepting Fannie Mae's argument would put the [*3]proverbial cart before the horse because, if followed to its logical end, the argument would permit a mortgagee to obtain judgment on a foreclosure claim before the claim even accrued—a proposition that cannot be true. In effect, there would be no statute of limitations for such claims. Consistent with our conclusion that the reinstatement provision does not affect acceleration of the full mortgage debt (see id. at 39-40), we reject Fannie Mae's contention that the delayed accrual of a foreclosure claim was a trade-off contemplated by the interplay of the mortgage's acceleration and reinstatement provisions.
Fannie Mae also contends that following the Second Department's approach in Dieudonne would violate public policy by disrupting the mortgage market, undermining the policy favoring uniform mortgages, and effectively conferring a windfall on Tortora by awarding him a "free" residence. We reject Fannie Mae's contention. Specifically, we note that it has been over a decade since the first foreclosure action was commenced. The court dismissed that action due to the mortgagee's failure to timely prosecute its claim. The court similarly dismissed the second foreclosure action, that time with prejudice, because of Fannie Mae's repeated failure to appear in court in support of its own motion for a judgment of foreclosure and sale. Given that history, Fannie Mae has only itself and its predecessor in interest to blame for failing to timely secure foreclosure of the mortgage, thereby creating the risk that Tortora would receive a "free" residence. Thus, the relatively unique circumstances of this case support the conclusion that adopting the rationale of Dieudonne will not violate public policy in the hyperbolic manner argued by Fannie Mae.
It is true enough that the presence of a reinstatement provision in a mortgage mitigates the harsh and unforgiving old rule that did not permit borrowers to pay arrears once a lender had elected to accelerate a loan (cf. Albertina Realty Co. v Rosbro Realty Corp., 258 NY 472, 477 [1932]). That does not, however, vitiate the duty of a lender to timely commence and prosecute a foreclosure action once it accelerates the debt. To that end, we are mindful that the policies undergirding statutes of limitations aim both to protect parties like Tortora against stale claims and to encourage parties like Fannie Mae not to sleep on their rights (see generally Siegel, NY Prac § 33 at 43 [5th ed 2011]). Tortora's ability to obtain a "free" home was simply the risk the mortgagee took by not diligently pursuing its prior foreclosure actions; it is not a reason for us to conclude that the mortgage's reinstatement provision prevented acceleration of the full amount of the debt in 2009.
C
Having concluded that the full mortgage debt was effectively accelerated despite the presence of the reinstatement provision, we further conclude that there is nothing in the record establishing that Fannie Mae or its predecessor in interest ever affirmatively elected to revoke the 2009 acceleration of the mortgage in the six years following the commencement of the first foreclosure action (see Deutsche Bank Natl. Trust Co., 157 AD3d at 935; Lavin v Elmakiss, 302 AD2d 638, 639 [3d Dept 2003] lv dismissed 100 NY2d 577 [2003], lv denied 2 NY3d 703 [2004]).
Thus, we conclude that Fannie Mae did not raise an issue of fact with respect to the statute of limitations and that the court properly dismissed the complaint in action No. 1 against Tortora with respect to principal amount of the mortgage debt (see Deutsche Bank Natl. Trust Co., 157 AD3d at 935).
III
Fannie Mae also contends on appeal that, even if the court properly granted the motion for summary judgment dismissing the complaint against Tortora in action No. 1 as time-barred to the extent it sought to recover the principal of the mortgage debt, the court erred in granting the motion to the extent that the complaint sought to recover interest that accrued on the principal in the six years preceding the commencement of action No. 1. Fannie Mae further contends that the court erred in denying its cross motion insofar as Fannie Mae sought summary judgment on its counterclaim in action No. 2 to recover the amount of authorized advances paid by its loan servicers on behalf of Squitieri. We disagree.
The court properly granted the motion with respect to the recovery of interest that accrued on the principal in the six years before the commencement of action No. 1 because the accrued [*4]interest, "being . . . [a] mere incident [of the mortgage debt], cannot exist without the debt, and the debt being extinguished[,] the interest necessarily [is also] extinguished" (Ajdler v Province of Mendoza, 33 NY3d 120, 126 [2019] [internal quotation marks omitted]; see generally Aurora Loan Servs., LLC v Taylor, 25 NY3d 355, 361 [2015]). A similar rationale supports the denial of the cross motion with respect to the counterclaim seeking recovery of the amount of the authorized advances because the provisions purportedly entitling Fannie Mae to those amounts, as terms of the mortgage, were incident to the extinguished debt and therefore "stand[] or fall[] with" it (Weaver Hardware Co. v Solomovitz, 235 NY 321, 331-332 [1923], rearg denied 236 NY 591 [1923]; see generally Ajdler, 33 NY3d at 126).
To the extent that Fannie Mae relies on a purported exception to the general rule that permits claims seeking recovery of incidents of residential mortgages (see e.g. Chapin v Posner, 299 NY 31, 42 [1949]; Ernst v Schaack, 271 App Div 1012, 1013 [2d Dept 1947], affd 297 NY 566 [1947]; Johnson v Meyer, 268 NY 701, 702 [1935]), we note that those cases do not "apply outside the narrow context of the mortgage moratorium legislation in which they were decided" (Ajdler, 33 NY3d at 128 n 4), i.e., Great Depression-era mortgage moratorium statutes that are no longer in effect (see Kirschner v Cohn, 270 App Div 126, 129 [2d Dept 1945]; Union Trust Co. of Rochester v Kaplan, 249 App Div 280, 281 [4th Dept 1936]).
* * *
Accordingly, the amended order should be affirmed. Based on the foregoing, Fannie Mae's remaining contention is academic.
Entered: October 2, 2020
Mark W. Bennett
Clerk of the Court