CHARLES C. MOORE, as Individual Trustee and CHATHAM PHENIX NATIONAL BANK AND TRUST COMPANY, as Corporate Trustee under Mortgage or Deed of Trust Made by 415 CENTRAL PARK WEST CORPORATION, Dated September 15, 1925, Plaintiffs, *v.* 415 CENTRAL PARK WEST CORPORATION and Others, Defendants.

Supreme Court, New York County, January 3, 1929.

*Stoddard & Mark* [*Yorke Allen* and *Ralph C. Taylor* of counsel], for the plaintiffs.

*M. Carl Levine,* for defendant Monroe M. Golding, Inc., and others.

*Hardin & Hess* and *James H. Douglas* [*James H. Douglas* and *H. F. R. Mulligan* of counsel], for the defendant Servel Corporation.

*Schechter & Lotsch* [*Jacob Schechter* of counsel], for the defendant Tigo Realty Co., Inc.

*Menken Brothers* [*S. Roth* of counsel], for the defendant Maurice Deutsch.

*Lawrence I. Gerber* [*S. Roth* of counsel], for the defendant Walter S. Schneider.

*Raphael & Brodek* [*L. Eisner* of counsel], for the defendant Almiral & Co., Inc.

*Joseph H. Fargis* [*L. A. Healy* of counsel], for the defendant de Paoli & Co., Inc.

*Milton Elias Schattman,* for the defendant United Pressed Steel Products Corporation.

*W. E. Vogel,* for the defendant John T. Swanson.

*Bertram L. Kraus* [*W. B. Delacy* of counsel], for Leslie R. Fort, trustee in bankruptcy.

*Stoddard & Mark* [*Yorke Allen* of counsel], for added defendant American Bond and Mortgage Company, Inc.

*Walter V. Flynn,* for added defendant Longacre Engineering & Construction Company, Inc.

SHERMAN, J. This suit for foreclosure of a first mortgage made to plaintiffs as trustees for bondholders in the sum of $1,325,000 by 415 Central Park West Corporation, covering premises located at One Hundred and First street and Central Park West, is opposed by the second mortgagee and by materialmen and others who have filed mechanics' liens. The mortgage, though dated September 15, 1925, was executed on October 6, 1925, at which time the plaintiffs became trustees thereunder. The American Bond and Mortgage Company had entered into an agreement with the defendant 415 Central Park West Corporation on June 26, 1925, which was followed by a further agreement, dated September 15, 1925, between the parties.

The opposing defendants contend that the agreement of June 26,

1925, was a building loan agreement which should have been filed within ten days after its execution pursuant to section 22 of the Lien Law (as amd. by Laws of 1916, chap. 507), and that the failure to file it made the interest of plaintiffs' trustees subordinate to the liens and claims of the persons who have since filed notices of lien. They assert that the subsequent agreement dated September 15, 1925, is to be held a modification of the prior agreement, and that the failure to file the earlier agreement was not remedied by the timely filing of the later agreement. Thus in their view the penalty of the statute attaches. The agreement dated September 15, 1925, was executed on October 6, 1925, simultaneously with the execution of the mortgage, and was filed the next day. Like the preceding agreement it was a brokerage contract, but the broker agreed to have available for the owner for disbursement in the manner therein provided the net proceeds of the sale of the bonds which were to be used to erect and complete the building. A careful examination of these agreements reveals that neither was, properly speaking, a building loan agreement. The American Bond and Mortgage Company did not agree to lend any moneys thereunder. It undertook to sell the bonds to be issued under a mortgage and contracted to make payment of the sums realized therefrom. This engagement did not make it a building loan agreement. (*Weaver Hardware Co.* v. *Solomovitz*, 235 N. Y. 321, 335; *McDermott* v. *Lawyers Mortgage Co.*, 232 id. 336.)

If, however, the agreements taken together or singly be regarded as a building loan agreement, and if the same had not been filed pursuant to section 22 of the Lien Law, nevertheless such failure would not make the claims of the plaintiffs as trustees under the said mortgage subject to the liens subsequently filed. This is because the plaintiffs were not "parties" to the agreements or either of them. The penalty of the statute for failure to file a building loan contract is visited only upon a "party" to the agreement. The American Bond and Mortgage Company (not the trustee) was a party to the agreement, and its conduct could not impair or alter the lien of the trustees acting for the investing bondholders.

The enterprise in the course of which this suit arose originated when one Isaac F. Roe contracted to purchase the premises at One Hundred and First street and Central Park West. Title was taken on October 6, 1925, by defendant 415 Central Park West Corporation, which was owned and officered by Roe. The purchase price was $435,000. The American Bond and Mortgage Company advanced $315,000, which with a subordinated second mortgage for $85,000, due October 1, 1926, now owned by defendant Tigo

Realty Company and $35,000 contributed by Roe made up the purchase price. The mortgage in suit was then placed upon the property and the second mortgage for $85,000 subordinated to its lien. Roe had represented himself as being a man of large means, owning valuable parcels of real estate, and the American Bond and Mortgage Company appears to have believed his statements. He also executed individual guaranties of the obligations undertaken by his corporation. The owner stipulated in the contract with the American Bond and Mortgage Company that the Longacre Engineering and Construction Company, a subsidiary of the American Bond and Mortgage Company, be engaged as general contractor for the erection of the building. The building has been completed. The bonds secured by this first mortgage have been sold by the American Bond and Mortgage Company to various holders scattered throughout the United States. The alleged default (upon the happening of which this suit was started on May 10, 1927) consists in the failure of the defendant 415 Central Park West Corporation to pay coupons which fell due on March 15, 1927, amounting to $14,354.16. Since that date coupons maturing on September 15, 1927, March 15, 1928, and September 15, 1928, have not been paid and installments of principal due September 15, 1927, March 15, 1928, and September 15, 1928, have not been met, making the total arrears $185,404.16, exclusive of interest upon these defaulted payments. The American Mortgage and Loan Company (a subsidiary controlled by the American Bond and Mortgage Company) purchased defaulted coupons which had not been met on March 15, 1927, their due date. A demand was made upon the trustees to institute a foreclosure action. The mortgage provided that the trustees had the discretionary right to begin such action, and, moreover, were compelled to do so when requested by holders of overdue coupons in the aggregate face amount of $10,000 and properly indemnified against expenses. On March 15, 1927, the American Bond and Mortgage Company had in its possession approximately $30,000 unexpended, which had not been paid out in the construction of the building. These moneys had been realized from the sale of bonds. The agreement of September 15, 1925 (paragraph " tenth "), provided that the American Bond and Mortgage Company might at any time apply any unexpended balance of the net proceeds to the payment of any principal or of any interest on the bonds, or to the payment of any tax lien, or as a deposit with the county clerk to cover undischarged mechanics' liens, but the agreement did not require it to do so. At that time liens had been filed against the building for about $100,000, and unpaid taxes had accrued. The second mortgage was overdue and

its holder threatened foreclosure. Prior thereto, in March, 1926, the American Bond and Mortgage Company had loaned $25,000 to Roe, taking as security all of the stock of the 415 Central Park West Corporation. Upon Roe's default in paying his renewal note in that amount, the stock was sold at auction on February 9, 1927, and acquired by nominees of the American Bond and Mortgage Company. Therefore, at the time of this default the American Bond and Mortgage Company, through its subsidiary, was the owner of the defaulted coupons and was likewise the owner of all of the capital stock of the holder of the equity.

Under these circumstances the lienors and second mortgagee contend that it was the duty of the American Bond and Mortgage Company to apply a part of the $30,000 belonging to the 415 Central Park West Corporation to defray the amount of the coupons owned by it, and that the request made to the trustees to begin this foreclosure action under these circumstances was in bad faith, actuated by the malign purpose of depriving of compensation these defendants, whose unpaid liens represented work done and materials furnished in the construction of the building and of nullifying the lien of the second mortgage to the end that the American Bond and Mortgage Company might hold this property free from all liens except that of the first mortgage. The contention of these defendants is not wholly without merit. If the American Bond and Mortgage Company had entered into this situation with the design of bringing about that result, its conduct might prevent a successful resort to a court of equity by it or by the trustees to effectuate such purpose by means of a foreclosure. (*Farmers' Loan & Trust Co.* v. *N. Y. & Northern R. Co.*, 150 N. Y. 410.) Or, if the American Bond and Mortgage Company, being in possession of the premises, had so utilized its control as to prevent the property from realizing moneys sufficient to pay these coupons, and had thus created the default, a court of equity would refuse relief. Here, however, the American Bond and Mortgage Company had acted in good faith and had acquired this stock for the success of the enterprise and the ultimate protection of the bondholders, whose lien now is sought to be made subordinate to defendant's. The defendant 415 Central Park West Corporation had been officered by Roe and his nominees. Roe had practically ceased to take any part in the conduct of the enterprise. The agent of the premises could not locate him, so that leases could be signed. Under these circumstances the American Bond and Mortgage Company was justified, when Roe failed to pay his note, in acquiring the ownership of the corporation which controlled the equity. It was not required to stand idly by and permit the coupon defaults to continue and

probably increase. In view of the fact that it had distributed these bonds as a sound investment, it would have been remiss if it had then done nothing towards making the property productive. Then when the coupons which had matured on March 15, 1927, were dishonored, the American Bond and Mortgage Company had to exercise its discretion as to whether or not it would, out of the moneys in its hands, make payment of these coupons. It is claimed that it owed to these opposing defendants the duty of applying those funds to the payment of these coupons. It is conceivable that it might, however, have been criticised if it had done so and had reimbursed itself in the amount that it had paid for the coupons. It owed some measure of duty to the investors whom it had persuaded to subscribe and pay for these bonds. Undoubtedly at that time the impending defaults which have since taken place were clearly foreshadowed. The circumstances shown by the evidence indicate that the American Bond and Mortgage Company, in declining to apply to interest payments the moneys which the bondholders had subscribed to the principal of the mortgage, did not act in bad faith or in violation of any duty owed to these contesting defendants. The objection that its conduct should not be countenanced by a court of equity and that the bondholders should be made to suffer the consequences is not well founded. In considering these contentions we must not lose sight of the duty and obligations of the plaintiffs as trustees representing the interests of the bondholders. They were called upon to have the mortgage securing the bonds declared paramount as against the priorities claimed by the lienors. Upon the happening of the default they became the active agents of the bondholders charged with the duty of protecting them.

The foregoing views also render untenable defendants' further contention that because of the possession by the American Bond and Mortgage Company of this fund there was no actual default at the time of the institution of this suit and that for such reason the complaint should be dismissed.

There remains for consideration another point raised by these defendants, who assert that at the time when the alleged default upon these coupons took place there was likewise in the hands of the American Bond and Mortgage Company the sum of approximately $132,000 which should be held to have then belonged to the 415 Central Park West Corporation. The validity of this contention depends upon whether the American Bond and Mortgage Company, as broker for the sale of the bonds, was entitled, under the agreement, to deduct and retain its commissions at the rate of ten per cent before all the bonds had been sold. If no commis-

sions were to be paid until all the bonds had been sold it was manifestly wrong for the American Bond and Mortgage Company to deduct its commissions as and when bonds were sold, and any commissions which were taken prior to the sale of the entire issue would be held in trust for the benefit of the 415 Central Park West Corporation. A court of equity would require that the liens of defendants filed prior to the commencement of the action and prior to the completed sale of the bonds be paid out of trust funds so held. But there is no provision in the agreement between the American Bond and Mortgage Company and the 415 Central Park West Corporation which can fairly be said to defer the date of payment of commissions for the selling of bonds until the entire issue had been sold. Indeed, the contract itself fairly indicates that the broker was entitled to receive its commissions from time to time as sales were actually made.

Judgment for plaintiffs.