■ EDWIN R. DUNN, JR., Respondent, v LEON R. MOORE, Appellant. [628 NYS2d 195] —Yesawich Jr., J. Appeal from a judgment of the Supreme Court (Ingraham, J.), entered June 17, 1994 in Chenango County, upon a decision of the court in favor of plaintiff.

In August 1988, defendant agreed to purchase plaintiff's property, consisting of a hotel and tavern in the City of Norwich, Chenango County, for $100,000 contingent upon his acquiring a license to dispense alcoholic beverages. He also entered into a three-year lease of the premises, for which he paid plaintiff a monthly rent of $325, commencing September 1, 1988. Upon obtaining the liquor license, defendant began operating the tavern and moved, with his family, into several rooms in the hotel. Although the sale, as originally contemplated, was never consummated, on May 9, 1989 defendant received a deed granting him an undivided one-half interest in the property, in exchange for which he gave plaintiff a $20,000 note secured by a mortgage on his newly acquired interest.

Defendant continued to operate the bar and made monthly payments to plaintiff of $657.03, apparently representing the mortgage payment of $332.03 plus the rent required under the lease, through August 1991. The parties disagree as to the sequence of events that occurred in late August 1991 and early September 1991, but it is clear that the lease was not renewed, and no further mortgage payments were made. By September 10, 1991, defendant had discontinued the bar business and was no longer in possession of the property. Plaintiff thereafter commenced this action to foreclose the mortgage, which was eventually resolved in his favor after a bench trial; defendant appeals from the resulting judgment of foreclosure.

Supreme Court did not err in rejecting defendant's attempts to prove that the transaction was structured so as to avoid the payment of certain transfer taxes. Even if defendant had been able to substantiate his allegation that the note and mortgage did not reflect the true purchase price, an additional $20,000 of which was to be paid in the form of "lease" payments, that fact would not insulate him from liability for his default, for the fraud in this regard, if any, was not committed against him but against the State, and he was plainly a knowing participant therein (cf., Higgins v Normile, 130 AD2d 828, 829). Defendant's other fraud charges are equally unavailing, for he does not contend that the mortgage and note were a sham and were never intended to be enforced, or that he would not have executed them but for plaintiff's misrepresentations.

There is merit, however, to defendant's argument that, given

the parties' relationship and their apparent understanding that the purchase price would be paid from profits derived from operating the tavern, if plaintiff in fact ousted him from the premises—and in so doing prevented him from being able to make the payments as they came due—it would be inequitable to permit plaintiff to benefit from this conduct by foreclosing on the mortgage (*cf., Fleischer v Terker*, 259 NY 60, 64; *Farmers' Loan & Trust Co. v New York & N. Ry. Co.*, 150 NY 410, 431; *Moore v 415 Cent. Park W. Corp.*, 133 Misc 376, 380). The credible record evidence leads us to conclude that this is exactly what occurred.

Defendant testified that on September 2, 1991, when he entered the bar with his son to set up and open for business that day, the beer coolers had been unplugged and plaintiff, who had been waiting in the tavern, told defendant that he was "out of business". Defendant's account of these events was corroborated by his son, by a customer who had been turned away from the bar that morning, by plaintiff's admission that he had converted the electric service to his name on August 27, 1991, and by an account entry reflecting that defendant had retained an attorney on September 4, 1991. In response, plaintiff made the somewhat dubious claim that defendant had simply abandoned the ongoing, and ostensibly profitable business, which had provided not only his livelihood but also living quarters for his family, without warning on or about September 10, 1991. In our view, these portions of plaintiff's testimony—which are replete with inconsistencies and uncorroborated—are wholly unconvincing.

As a tenant in common, defendant was entitled to occupy the premises and utilize the same in an appropriate manner; plaintiff had no right to interfere with defendant's use and enjoyment of the property (*see*, 24 NY Jur 2d, Cotenancy and Partition, §§ 60-61, at 316-318). Furthermore, in the circumstances prevailing, plaintiff's acts—unequivocally informing defendant that he would not be permitted to continue operating his business and denying him access to the electricity necessary to do so—clearly placed defendant on notice that plaintiff intended to exert total control over the property, in direct contravention of defendant's right to possession, thus effectively ousting him therefrom (*see, Johnston v Martin*, 183 AD2d 1019, 1021; *see also, Zapp v Miller*, 109 NY 51, 57-58; *compare, Pitson v Sellers*, 206 AD2d 575, 577). Because plaintiff's own conduct precipitated defendant's inability to make the payments required on the note, foreclosure should not have been granted.

Inasmuch as defendant was precluded from eliciting proof with respect to damages he claims to have suffered as a result of plaintiff's unlawful withholding of possession of the premises (third counterclaim) and with respect to his allegation that plaintiff illegally converted his personal property (fourth counterclaim), the matter must be remitted for the purpose of developing such proof.

Mikoll, J. P., Mercure, Crew III and White, JJ., concur. Ordered that the judgment is reversed, on the law and the facts, and matter remitted to the Supreme Court for further proceedings not inconsistent with this Court's decision, with costs to abide the event.